**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **In re:** § | | **CHAPTER 11 CASE** |
| §| | |
| **AGE REFINING, INC.** § | | **CASE NO. 10-50501** |
| §| | |
| **Debtor.** § | | |

**EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 AND 507 (I)(A) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL, (B) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING, (C) GRANTING SECURITY INTERESTS AND/OR SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS TO THE POSTPETITION LENDER, AND (D) GRANTING ADEQUATE PROTECTION TO THE PREPETITION LENDERS; (II) SCHEDULING A FINAL HEARING; AND (III) GRANTING RELATED RELIEF**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

AGE Refining, Inc., the debtor and debtor-in-possession (the "Debtor") in the above captioned case (the "Case"), hereby files this *Emergency Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I)(A) Authorizing the Debtor to Use Cash Collateral, (B) Authorizing the Debtor to Obtain Postpetition Financing, (C) Granting Security Interests and/or Superpriority Administrative Expense Status to the Postpetition Lenders, and (D) Granting Adequate Protection to the Prepetition Lenders; (II) Scheduling a Final Hearing; and (III) Granting Related Relief* (the "Motion"), and in support of this Motion, the Debtor respectfully represents as follows:

**I.    JURISDICTION AND VENUE**

1.    This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2857921.4

## II. PROCEDURAL BACKGROUND

2. On February 8, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code").

3. The Debtor continues to manage and operate its business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No creditors' committee has been appointed in these cases by the United States Trustee. Further, no trustee or examiner has been requested or appointed.

4. The statutory predicates for the relief requested herein are sections 105, 361 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

5. A further description of the background of the Debtor and the events leading up to the filing of the this Case is provided in the *Unsworn Declaration Under Penalty of Perjury of Lisa Trefger, Director of Business Administration and Regulatory Affairs in Support of First Day Pleadings*, located at docket number 4, which is incorporated by reference herein.

## III. DESCRIPTION OF DEBT

6. Before the Petition Date, the Debtor obtained financing from two primary sources. The Debtor is a borrower under a revolving line of credit pursuant to that certain *Amended and Restated Credit Agreement,* dated September 12, 2008, as amended by *First Amendment to Amended and Restated Credit Agreement*, dated March 26, 2009 (the "Revolving Facility") with JPMorgan Chase Bank, N.A. ("JPMorgan"), as the administrative agent (the "Revolving Agent") for the lenders thereunder (the "Revolving Lenders"). Pursuant to the Revolving Facility, the Revolving Lenders provided a total commitment of $50,000,000 (the "Revolving Facility Commitment") under various revolving loans and letters of credit. As of the

Petition Date, the Debtor carried a zero balance under the Revolving Facility (the "Revolving Facility Indebtedness"). The Revolving Facility Indebtedness is secured by, *inter alia*, the Debtor's inventory, accounts receivable and cash collateral (the "Revolving Facility Collateral").

7. Second, the Debtor is a borrower under that certain *Amended and Restated Credit Agreement,* dated September 12, 2008, as amended by *First Amendment to Amended and Restated Credit Agreement*, dated March 26, 2009 (the "Construction Loan") with Chase Capital Corporation ("Chase Capital"), as the administrative agent ("Construction Loan Agent") for the lenders under the Construction Loan (the "Construction Lenders"). Pursuant to the Construction Loan and associated documents, the Debtor had access to $46,000,000.00 (the "Construction Loan Commitment") through two separate notes. As of the Petition Date, approximately $29,600,000.00 was outstanding under the Construction Loan (the "Construction Loan Indebtedness"). The Construction Loan Indebtedness is secured by, *inter alia*, the Debtor's real property, refining plants, certain expansion construction contracts, and substantially all of the Debtor's equipment (collectively, the "Construction Loan Collateral").

8. Also before the Petition Date, the Debtor entered into that certain *Second Lien Credit and Security Agreement,* dated as of September 12, 2008, as amended by *First Amendment to Amended and Restated Credit Agreement*, dated March 26, 2009 (the "Second Lien Agreement") with Chase Capital, as the administrative agent (the "Junior Administrative Agent") for the lenders under the Second Lien Agreement (the "Junior Lenders"). Pursuant to the Second Lien Agreement, the Junior Lenders committed an additional $10,000,000.00 of financing to the Debtor, secured by second liens on the same Construction Loan Collateral. As of the Petition Date, the total outstanding indebtedness under the Second Lien Agreement was $10,000,000.00 (the "Second Lien Indebtedness").

2857921.4

9. JPMorgan has also issued approximately $29.6 million in standing letters of credit (the "Letters of Credits"), which remain outstanding as of the Petition Date. The outstanding Letters of Credit are as follows:

- CTCS-523498: $3,300,000. Exp. Feb. 28, 2010, for Gulfmark Energy, Inc.
- CTCS-537859: $23,072,866. Exp. Feb. 28, 2010, for Stusco–Credit (Shell).
- CTCS-538261: $410,000.00. Exp. Feb. 28, 2010, for Genesis Crude, LP.
- CTCS-278731: $2,679,536.04. Exp. Mar. 10, 2010, for Plains Marketing, LP.
- CTCS-652201: $25,000.00. Exp. Aug. 1, 2010, for the Railroad Commission of Texas.
- CTCS-652307: $25,000.00. Exp. Aug. 31, 2010, for the Railroad Commission of Texas.
CTCS-522269: $100,000.00. Exp. May 1, 2010 (subject to a 36 month extension, if notice given 60 days before expiration), for James River Insurance Company.[1]

10. The Revolving Lenders will consider extending credit to the Debtor, pursuant to that certain *Debtor in Possession Financing Amendment and Second Amendment to Amended and Restated Credit Agreement* (the "DIP Agreement"). Pursuant to the DIP Agreement, the Revolving Lenders (hereafter, the "DIP Lenders") will make available a postpetition borrowing base of $35,000,000.00 (the "DIP Facility"). The terms of the DIP Agreement are summarized below, however the summary is subject to final documents:

| | |
|---|---|
| **Borrower:** | AGE Refining, Inc., as debtor-in-possession |
| **DIP Lenders:** | The Revolving Lenders, as defined above. |
| **The DIP Financing:** | DIP Lenders shall provide a commitment to Borrower for $35,000,000.00 in the aggregate of Debtor in Possession Financing in conjunction with the Borrower's Chapter 11 petition for bankruptcy protection. The Commitment shall consist of a revolving facility of up to the committed amount, subject to court approval. |
| **Purpose:** | Fund operating expenses, including short term advances and letters of credit necessary to obtain the supply of crude oil. |
| **Loan Amount:** | $35,000,000.00 (the "Commitment"). |

---

[1] Other standby letters of credit were extended by JPMorgan but expired on January 31, 2010, or earlier. The figures represented above do not reflect those expired letters of credit, as they were not called prior to their respective expiration dates.

| | |
|---|---|
| **Commitment Fee:** | .75% on the average daily amount of the unused amount of the Postpetition Commitment of such Lender during the period from and including the date of the Petition Date to but excluding the Postpetition Termination Date. Accrued commitment fees shall be payable in arrears on the last day of each month and on the Postpetition Termination Date, commencing on the first such date to occur after the Petition Date. All commitment fees shall be computed on the basis of a year of 360 days, unless such computation would exceed the Highest Lawful Rate, in which case interest shall be computed on the basis of a year of 365 days (or 366 days in a leap year), and shall be payable for the actual number of days elapsed (including the first day but excluding the last day). |
| **Letter of Credit Fee:** | Per annum rate equal to 5.50% payable monthly in arrears on the last day of each month and on the Postpetition Termination Date. |
| **Collateral Administration Fee:** | Borrower shall pay to Lenders a Collateral Administration Fee in the amount of $5,000 in advance per month until all obligations under the Loan are paid to Lenders. |
| **Interest Rate:** | Adjusted LIBO Rate in effect from time to time plus 5.50%, payable monthly in arrears on the first Business Day of each month, and on the Postpetition Termination Date. |
| **Default Rate:** | All principal outstanding after the occurrence of a Postpetition Default shall bear interest, from the date of such Postpetition Default until the date on which such amount is due until such amount is paid in full or such Postpetition Default is waived or cured, payable on demand, at the Alternate Base Rate in effect from time to time plus 7.50% per annum. |
| **Effective Date:** | On entry of Order. |
| **Collateral:** | Subject to the Intercreditor Agreement, any and all of the properties and assets of the Borrower and the Borrower's bankruptcy estate, both real and personal, including, without limitation, all cash, accounts, inventory, equipment, general intangibles, intellectual property of all kinds including patents, trademarks, trade names, service marks and copyrights, securities, instruments, investment property, deposit accounts, chattel paper, warehouse receipts, bills of lading, tax refunds of any nature, insurance proceeds, insurance premium refunds, deposits of any kind, security deposits, utility deposits, bonds and proceeds of same, causes of action (whether by contract or tort, common law or statutory, equitable or otherwise), oil and gas interests, |

leasehold interests in real estate or personal property and customer lists, whether acquired before or after the Petition Date, whether now owned and existing or hereafter acquired, created, or arising, and all products, proceeds, rents, revenues, and profits thereof (including, without limitation, claims of the Borrower against third parties for loss or damage to such property), and all accessions thereto, substitutions and replacements therefore, and wherever located, in which the Administrative Agent, for the benefit of the Lenders, is granted a lien or security interest to secure the Postpetition Obligations as set forth in the Financing Order.

### IV. RELIEF REQUESTED

11. Pursuant to Bankruptcy Code sections 361 and 363, the Debtor requests interim and final authority: (a) to use the cash collateral ("Cash Collateral") of the Revolving Lenders, the Construction Loan Lenders and the Second Lien Lenders (collectively, the "Prepetition Lenders") in accordance with the terms and conditions set forth herein, the proposed budget (the "Interim Budget"), and the proposed Order (the "Interim Order"); (b) to borrow funds, as necessary, pursuant to the DIP Agreement; (c) to use Cash Collateral and to borrow funds under the DIP Agreement on a final basis; and (d) to grant liens, administrative claims and other adequate protection to the Prepetition Lenders as more particularly set forth herein. A copy of the Interim Budget remains the subject of negotiations among the Debtor and the Prepetition Lenders. A copy of the Interim Budget will be served upon the United States Trustee, the unsecured with the 20 largest claims and the Prepetition Lenders, as one becomes available. A copy of the proposed DIP Agreement is attached hereto as **Exhibit A**. A copy of the proposed Interim Order is attached hereto as **Exhibit B**. **THE FORM OF THE DIP AGREEMENT AND FORM OF THE ORDER REMAIN SUBJECT TO FINAL APPROVALS BY LENDER AND BY THE DEBTOR.**

12. The Debtor respectfully requests authorization to use cash collateral, and to borrow funds under the DIP Agreement, to pay overhead, operating expenses and ordinary

course of business obligations that are necessary to maintain and preserve the going-concern value of the Debtor's assets and businesses, and to administer the estate, including, but not limited to, using Cash Collateral or borrowing funds, as necessary, to pay (a) any pre-petition operating and other expenses approved by the Court, (b) the post-petition operations of the Debtor's business, and (c) all costs and expenses arising in connection with the administration of its estate. The Debtor also seeks authority to grant security interests and adequate protection as set forth below. Finally, the Debtor seeks to schedule a final hearing on this Motion.

## V. AUTHORITY AND ARGUMENTS

A. **Debtor-in-Possession Financing**

    **(i)    Senior Lien on Collateral of Existing Lenders**

13. Section 364(d) of the Bankruptcy Code provides that a debtor may obtain post-petition financing by granting a lien on property of the estate that is senior or equal to liens that already exist on such property, so long as the debtor provides adequate protection of the previous lienholders interest in such property. *In re Swedeland Development Group, Inc.,* 16 F.3d 552, 564 (3d Cir. 1994) (debtor must provide adequate protection to pre-petition secured creditor in order to obtain post-petition superpriority financing); *In re Crouse Group, Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (debtor must establish that the credit transaction is necessary to preserve the estate and the terms of the transaction are fair and reasonable).

14. Section 364(d) of the Bankruptcy Code provides:

(d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if —

    (A) the trustee is unable to obtain such credit otherwise; and

    (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

(2) In any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection.

15. The Debtor satisfies the requirements of section 364(d) of the Bankruptcy Code as the Debtor is unable to obtain credit otherwise. The Prepetition Lenders are adequately protected, and the proposed financing is in the best interest of the estate. The Debtor seeks to grant a senior lien only upon the collateral of the Prepetition Lenders, who have agreed to the granting of such lien. Any other parties that may have a lien on other property of the estate are not affected by this request for a senior or equal lien. Furthermore, as will be demonstrated below, the Prepetition Lenders will be provided additional adequate protection during the Case.

16. The proposed DIP Agreement is required to preserve and maintain the Debtor's going concern value and is, therefore, in the best interest of the Debtor's estate and creditors. The availability of credit under the DIP Agreement is necessary to provide working capital for the Debtor to continue purchasing crude oil and to afford the Debtor's suppliers, other vendors and customers the necessary confidence to continue ongoing relationships with the Debtor, including the extension of credit terms for the payment of goods and services. The DIP Agreement will be viewed favorably by the Debtor's employees, minimize disruption to the Debtor's business and ongoing operations, and avoid immediate and irreparable harm to the Debtor, its creditors, its business, its employees, and its assets.

17. Furthermore, the terms and conditions of the DIP Agreement are fair, reasonable, and appropriate, and were extensively negotiated by the parties in good faith and at arms' length. In the Debtor's business judgment, the DIP Agreement represents the best financing option to effectuate these purposes and advance the Debtor's reorganization efforts. The terms of the DIP Agreement neither (a) tilt the conduct of this Case and prejudice the powers and rights that the

8

2857921.4

Bankruptcy Code confers for the benefit of all creditors, <u>nor</u> (b) prevent motions by parties in interest from being decided on their merits.

18. Additionally, the Carve-Out (as defined below) is fair, reasonable, and appropriate. In this regard, the Carve-Out will ensure that the Debtor and any official committees are able to obtain the assistance of counsel, thereby promoting the collective rights and expectations of parties in interest. *See In re Ames Dep't Stores*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (noting that courts generally insist on "a carve out" for the professional fees of debtors' counsel, counsel for official committees, and possible trustee's counsel "to preserve the adversary system" and that "[a]bsent such protection, the collective rights and expectations of all parties in interest are sorely prejudiced").

19. Likewise, the various fees and charges required under the DIP Agreement are reasonable and appropriate under the circumstances. Indeed, courts routinely authorize similar lender incentives that extend beyond the specific liens and rights specified in Bankruptcy Code section 364. *See R.T.C. v. Official Unsecured Creditors Committee* (*In re Defender Drug Stores, Inc.*), 145 B.R. 312, 316-318 (B.A.P. 9th Cir. 1992) (approving financing facility pursuant to section 364 that included a lender "enhancement fee").

**(ii) Additional Liens on Unencumbered Assets or Second Liens**

20. Pursuant to section 364(c) of the Bankruptcy Code, a debtor may also in the exercise of its business judgment, incur secured debtor on the unencumbered assets of the debtor or junior liens on encumbered assets, if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estates. *See, e.g., In re Simasko Production Co.,* 47 B.R. 444, 448-9 (Bankr. D. Colo. 1985) (authorizing interim financing stipulation where debtor's best business judgment indicated financing was necessary and reasonable for benefit of estates); *In re Ames Dept. Stores,* 115 B.R. at 38 (with respect to postpetition credit, courts "permit

9

debtors in possession to exercise their basic business judgment consistent with their fiduciary duties.")

21. Section 364(c) of the Bankruptcy Code provides:

(c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt-

> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
>
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3) secured by a junior lien on property of the estate that is subject to a lien.

22. The Debtor has been unable to procure the required funds in the form of unsecured credit or unsecured debt with an administrative priority. The DIP Lenders will not receive a lien upon the proceeds from causes of action arising under sections 544, 545, 547 through 551 and 553. Under the circumstances, the Debtor should be authorized to enter into a secured financing arrangement under section 364(c) of the Bankruptcy Code.

23. Having determined that financing was available only under sections 364(c) and (d) of the Bankruptcy Code, the Debtor negotiated the DIP Agreement at arms' length and pursuant to its best business judgment. Such negotiations are to be accorded great weight so long as it does not run afoul of the provision of and policies underlying the Bankruptcy Code. *See, e.g., Bray v. Shenandoah Federal Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) (approving debtor-in-possession financing necessary to sustain seasonal business); *In re Ames Dep't Stores*, 115 B.R. at 40 (with respect to postpetition credit, courts "permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties.").

24. In satisfying the standards of section 364(c) and (d) of the Bankruptcy Code, a debtor need not seek credit from every available source, but should make a reasonable effort to seek other sources of credit available of the type set forth in sections 364(a) and (b) of the Bankruptcy Code. *In re Snowshoe Co.*, 789 F.2d at 1088 ("the statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable"). Instead, the debtor's efforts are to be considered on a case by case basis, particularly "[g]iven the 'time is of the essence' nature of this type of financing." *In re Reading Tube Indus.*, 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987). In *In re Sky Valley, Inc.*, 100 B.R. 107, 112-13 (Bankr. N.D. Ga. 1988), the Court stated that "it would be unrealistic and unnecessary to require Debtors to conduct such an exhaustive search for financing" where the business suffered from financial stress, had little or no unencumbered property, and the primary property was subject to numerous liens, and thus the Debtors' approach of only four lenders was sufficient under such circumstances.

25. The DIP Agreement is clearly for the benefit of the Debtor's estate and creditors. As set forth above, it is critical to maintaining the Debtor's refining operations and, thus, preserving and enhancing the Debtor's going concern value. With the additional liquidity provided by the DIP Agreement, the Debtor will be able to obtain goods and services in connection with its operations on normal credit terms, thereby permitting the Debtor to generate revenues, pay its employees, and operate its business for the benefit of all parties-in-interest.

26. The terms and conditions of the DIP Agreement are fair and reasonable and were negotiated by the parties in good faith and at an arms' length. Accordingly, the DIP Lenders should be accorded the benefits of section 364(e) of the Bankruptcy Code in respect of the Loan.

2857921.4

**B.     Immediate Need for Use of Cash Collateral**

27.     The Debtor's use of property of the estates is governed by Bankruptcy Code section 363(c), which provides, in relevant part:

> (1) If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.
>
> (2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless – (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363 (c)(1)-(2).

28.     The Debtor requires immediate use of Cash Collateral in the amount set forth in the Interim Budget, including cash proceeds, to continue the operation of its business. Without such funds, the Debtor will not be able to pay costs and expenses, including, but not limited to, wages, salaries, rent, professional fees, general and administrative operating expenses, delivery costs and others that arise in the administration of this Case and in the ordinary course of the Debtor's business. Without authorization to use the Cash Collateral under section 363(c)(2)(B) of the Bankruptcy Code, the Debtor would be left without its primary source of working capital.

29.     Absent the ability to use Cash Collateral as set forth in the Interim Budget, the Debtor will be forced to shut down all of its operations abruptly, which will negatively impact the value of its assets and eliminate any prospect for a distribution to unsecured creditors. The Debtor further believes that an abrupt shutdown will result in a severe and dramatic loss of collateral value, causing the Prepetition Lenders to receive a drastically reduced value for the collateral securing the indebtedness under the prepetition credit agreements (the "Prepetition Collateral").

30. The Debtor requests interim authorization to use Cash Collateral as set forth in the Interim Budget until a final order granting further use of cash collateral can be entered. The Debtor is without sufficient funds, other than Cash Collateral, to operate until a final hearing on this Motion can be held. The Debtor's inability to timely pay the costs and expenses set forth in the Interim Budget will result in immediate and irreparable harm to its assets. Because the Debtor's request for interim authorization seeks the use of only that amount of Cash Collateral as is necessary to avoid immediate and irreparable harm to the value of its assets pending a final hearing, its request complies with Rules 4001(b)(2) and 6003 of the Federal Rules of Bankruptcy Procedure.

31. The Interim Budget itemizes the sources and uses of cash and provides a weekly projection of cash receipts and expenditures. The Interim Budget includes a list of business expenses that are reasonable and necessary and that must be paid in order to continue the Debtor's business until such time as a final hearing on the Motion can be held. The Debtor proposes that any amounts listed in the Interim Budget that are unused in any week may be carried over and used by the Debtor in any subsequent week, on a line-item basis. The Debtor also requests that any amounts listed in the Interim Budget that are unused in any week for a particular line item may be used by the Debtor for any other line item in that given week so long as the aggregate total of all line items does not exceed the budgeted amount for that week.

32. The Debtor also requests that the Court authorize it to continue using Cash Collateral as set forth in the Interim Budget or any substitute budget after a final hearing on the Motion.

2857921.4

C.  **Grant of Adequate Protection Pursuant to Bankruptcy Code § 363(e)**

33. Bankruptcy Code section 363(e) provides that "on request of an entity that has an interest in property used . . . or proposed to be used . . ., the court . . . shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). The providing of adequate protection is mandatory. Bankruptcy Code section 361 sets forth a non-exclusive list of forms of adequate protection, which include periodic cash payments, additional liens, replacement liens, and other forms of relief. 11 U.S.C. § 361. A determination of adequate protection is decided on a case-by-case basis, involving a consideration of the "nature of the creditor's interest in the property, the potential harm to the creditor as a result of the property's decline in value and the method of protection." *Memphis-Shelby County Airport Authority v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 783 F.2d 1283, 1286 (5th Cir. 1986). The purpose of adequate protection is to ensure that a secured party's economic position is not worsened because of the filing of a bankruptcy case. *In re DeSardi*, 340 B.R. 790, 804 (Bankr. S.D. Tex. 2006).

34. The Debtor proposes to adequately protect the Prepetition Lenders' alleged interest in their Prepetition Collateral in numerous ways. First, the Debtor believes that the value of the Prepetition Collateral for each respective Prepetition Lender substantially exceeds the sum total of the indebtedness to such Prepetition Lender such that the resulting equity cushion will protect the Prepetition Lenders against any decrease in the value of their interests in the Prepetition Collateral for the duration of the requested use of its Cash Collateral and other Prepetition Collateral interests.

35. Second, the Debtor proposes to grant the Prepetition Lenders replacement liens in its Prepetition Collateral as set forth herein and in the Interim Order. Subject to prior perfected

14

and unavoidable liens and security interests and to the extent of any decrease in the value of the Prepetition Lenders' respective interests as a result of the Debtor's use of Cash Collateral, the Debtor proposes to grant the Prepetition Lenders replacement liens upon: (a) all assets in which the Prepetition Lenders held a validly perfected lien as of the Petition Date; (b) all property acquired by the Debtor after the Petition Date that is of the exact nature, kind or character of the Prepetition Collateral; and (c) all cash and receivables that are the proceeds, product, offspring or profits of the Prepetition Collateral. The Debtor anticipates that those replacement liens will adequately protect the Prepetition Lenders for the use of Cash Collateral. The Debtor does not propose to grant the Prepetition Lenders liens in avoidance actions under chapter 5 of the Bankruptcy Code. The Debtor does seek an order modifying the automatic stay to the extent necessary to enable the Prepetition Lenders to perfect any liens or replacement liens granted hereunder.

36. Additionally, the replacement lien will be subject to a carve-out in the amount set forth in the Interim Budget for the Debtor's professionals and fees owing to the Office of the U.S. Trustee (the "Carve-Out").

37. Third, the Debtor will provide the Prepetition Lenders with ample information relating to projected revenues and expenses, actual revenue and expenses, and variances from the Interim Budget. This information will enable the Prepetition Lenders to monitor their interests in the Prepetition Collateral and Cash Collateral. Reporting of financial information can also be a sufficient form of adequate protection. *See, e.g., Mutual Benefit Life Ins. Co. v. Stanley Station Assocs., L.P. (In re Stanley Station Assocs., L.P.)*, 140 B.R. 806, 809 (D. Kan. 1992) ("In addition, we believe the request . . . for 'timely filing of proper monthly operating reports . . .' falls within the ambit of adequate protection. . . ."); *Sumitomo Trust & Banking Co. v. Holly's,*

*Inc. (In re Holly's, Inc.)*, 140 B.R. 643, 706 (Bankr. W.D. Mich. 1992) (periodic financial reports required as part of adequate protection).

38. Nothing herein shall be construed of a waiver of the Debtor's right to challenge the validity, priority and amount of any liens or secured claims asserted by the Prepetition Lenders, or to take any other actions provided under chapter 5 of the Bankruptcy Code.

## VI. NOTICE

A. Notice With Respect to Interim Cash Collateral

25. Notice of this Motion has been given by email to the office of the United States Trustee for the Western District of Texas and to the Prepetition Lenders and their counsel. A copy of the Motion shall be mailed to (i) the holders of the twenty (20) largest unsecured claims against the Debtor; and (ii) certain governmental entities, including the Defense Energy Support Center, counsel and parties-in-interest. The Debtor submits that under the circumstances, no further notice of the hearing on the interim financing is necessary and request that any further notice be dispensed with and waived.

B. Notice With Respect to Final Cash Collateral

26. The Debtor respectfully requests that the Court set a final hearing date on the Motion for such time as is available in the Court's discretion and authorize the Debtor to serve a copy of this Motion and any interim order which fixes the time and date for filing objections to this Motion, by first class mail upon (i) counsel to any official committee of unsecured creditors appointed in this case; (ii) the Office to the United States Trustee; (iii) all parties who have filed requests for notice under Bankruptcy Rule 2002; (v) the twenty (20) largest unsecured creditors of the Debtor at their last known addresses; (vi) the Prepetition Lenders and their counsel; and

(vii) all other parties ordered by the Court. The Debtor requests that the Court deem such notice of the final hearing to be sufficient notice under Bankruptcy Rule 4001.

## VII. PRAYER

WHEREFORE, the Debtor respectfully requests that the Court enter an Order (a) authorizing, on an interim basis, the Debtor's use of Cash Collateral; (b) authorizing on a final basis the Debtor's use of Cash Collateral or scheduling a final hearing on this Motion; and (c) granting adequate protection to the Prepetition Lenders as more particularly set forth herein and modifying the automatic stay to enable the Prepetition Lenders to perfect such liens, if necessary. The Debtor further requests that the Court grant it such other and further relief to which they may be justly entitled.

Dated: February 8, 2010       Respectfully submitted,

**COX SMITH MATTHEWS INCORPORATED**

By: */s/ Mark E. Andrews*
    Mark E. Andrews
    State Bar No. 01253520
    Aaron M. Kaufman
    State Bar No. 24060067
    1201 Elm Street, Suite 3300
    Dallas, Texas 75270
    (214) 698-7800
    (214) 698-7899 (Fax)

-and-

Carol E. Jendrzey
State Bar No. 21617500
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
(210) 554-5500
(210) 226-8395 (Fax)

**PROPOSED ATTORNEYS FOR DEBTOR AND DEBTOR-IN-POSSESSION**

2857921.4

## **CERTIFICATE OF CONFERENCE**

The undersigned certifies that Cox Smith Matthews Incorporated, as proposed counsel for Debtor, has discussed the potential filing of this case and these pleadings prior to filing this Motion. A copy of the pleadings will be delivered to the office of the U.S. Trustee, and counsel will work with the U.S. Trustee to resolve any issues or concerns raised by the U. S. Trustee with respect to the relief requested prior to the hearing on this Motion.

                     */s/ Carol E. Jendrzey*
                     Carol E. Jendrzey

2857921.4