**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **In re:** | § § | **CHAPTER 11 CASE** |
| **AGE REFINING, INC.,** | § § | **CASE NO. 10-50501** |
| Debtor. | § § | |

**MOTION UNDER BANKRUPTCY RULE 9019 TO APPROVE SETTLEMENT
AND RELEASE AGREEMENT WITH CERTAIN INSURERS AND UNDERWRITERS**

TO THE HONORABLE LEIF M. CLARK, UNITED STATES BANKRUPTCY JUDGE:

Eric J. Moeller, the Chapter 11 Trustee (the "Trustee") over the estate of AGE Refining, Inc., (the "Debtor") in the above-captioned case (the "Case"), hereby files this motion (the "Motion"), pursuant to section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking an approval of a certain settlement agreement (the "Settlement Agreement"), a copy of which is attached hereto as **Exhibit "1"**, by and among the Trustee and certain insurance companies and underwriters (collectively, the "Insurers"),[1] and for such other related relief as is necessary to consummate the Settlement Agreement. In support of this Motion, the Trustee respectfully represents as follows:

**I. JURISDICTION, VENUE AND PROCEDURAL BACKGROUND**

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] A complete listing of the Insurers is detailed in the schedule attached to the Settlement Agreement as Exhibit A.

2. The statutory basis for the relief requested herein appears under sections 105(a), 541(a) and 1107(a) of title 11 of the United States Code (as amended, the "Bankruptcy Code") and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3. On February 8, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code").

4. The Debtor continued to manage and operate its business as debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code until, on July 6, 2010, the Trustee was appointed to this Case.

5. On or about March 17, 2010, the United States Trustee appointed the Committee of Unsecured Creditors (the "Committee").

## II. RELEVANT FACTS

6. An important aspect of the Debtor's operations was the ability to generate its own power from a steam turbine and generator. On July 20, 2009, the Debtor experienced a mechanical failure to its generator, requiring substantial repair and replacement. With the assistance of several contractors, engineers and other professionals, the Debtor attempted to restart the generator on May 1, 2010, but experienced another mechanical failure requiring additional repairs. The Debtor has filed claims with the Insurers under the applicable insurance policies in effect during the dates of the two STG incidents.

7. While the Insurers have acknowledged the existence of coverage and have advanced funds to assist in the Debtor's repairs, the Trustee and the Insurers disagree as to the amount and scope of loss or damage resulting from the incidents and the amount of insurance coverage applicable under the policies. Notwithstanding such disputes, the Trustee and the

Insures have been able to reach a compromise, which is memorialized in the Settlement Agreement and for which the Trustee now seeks the Court's approval.

### III. RELIEF REQUESTED

8. By this Motion, the Trustee asks the Court to approve the Settlement Agreement, a copy of which is attached to this Motion as **Exhibit "1,"** and to authorize the Trustee to enter into such agreement with the Insurers. As described more fully below, the Settlement Agreement would resolve disputes with the Insurers with respect to coverage for the STG incidents. A proposed order approving the Settlement Agreement is attached to this Motion as **Exhibit "2."** The Trustee requests entry of an order substantially similar to the attached proposed order.

9. The key terms of the Settlement Agreement are as follows:[2]

   (a) The Insurers will tender a one-time payment of two million four hundred thousand ($2,400,000.00) to the Trustee in full and final settlement of all claims arising from or related to the STG incidents occurring on July 20, 2009, and May 1, 2010.

   (b) The Trustee and the Insurers provide mutual releases concerning claims related to or arising from the two STG incidents.

   (c) The Trustee will take all actions necessary and possible to defend and hold harmless the Insurers from claims asserted by third parties by, through and under the Debtor, the Trustee and the applicable insurance policies.

### IV. ARGUMENTS AND AUTHORITY

*A. Standards under Rule 9019(a)*

10. Under Bankruptcy Rule 9019(a), the Court has discretionary authority to approve a compromise or settlement. *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.),* 68 F.3d 914, 917 (5th Cir. 1995); *see also Protective Comm. for Indep.*

---

[2] Nothing in this Motion is intended to modify the terms of the Settlement Agreement. The summary of key terms above is provided for the benefit of the Court and interested parties. To the extent the summary conflicts with the terms of the Settlement Agreement, the terms of the Settlement Agreement shall prevail.

*Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). Bankruptcy settlements "are a normal part of the process of reorganization" and are "desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicated and costly." *Rivercity v. Herpel (In re Jackson Brewing Co.),* 624 F.2d 599, 602 (5th Cir. 1980) (quoting *Case v. Los Angeles Lumber Prods. Co.,* 308 U.S. 106, 130 (1939)).

11. Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." *See* FED. R. BANKR. P. 9019(a). The rule is silent, however, with respect to the standards to be applied when considering approval of such settlements or compromises. The Fifth Circuit has established the following factors to consider in determining whether approval is warranted:

> (a) the probability of success in litigation, with due consideration for the uncertainty in fact and law;
>
> (b) the complexity and likely duration of litigation and any attendant expenses, inconvenience and delay;
>
> (c) the proportion of creditors who do not object to, or who affirmatively support the proposed settlement; and
>
> (d) the extent to which the settlement is truly the product of arms' length bargaining and not the product of fraud or collusion.

*See Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. Inc. (In re Cajun Elec. Power Coop. Inc.),* 119 F.3d 349, 356 (5th Cir. 1997); *In re Jackson Brewing,* 624 F.2d at 602. In considering "all other factors," the Fifth Circuit has further explained that courts should consider the best interest of creditors, with proper deference to their reasonable views, and consider the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion. *See In re Cajun Elec. Power Coop. Inc.,* 119 F.3d at 356.

12. This Court is authorized to approve the Settlement Agreement. Section 105 of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue an order…necessary or appropriate to carry out the provisions of the [Bankruptcy Code]. A decision to accept or to reject a compromise or settlement is within the sound discretion of the Court. *See* 9 *Collier on Bankruptcy* 9019.02 (15th ed. rev. 2001). "Compromises are favored in bankruptcy" because they minimize the costs of litigation and further parties' interest in expediting administration of a bankruptcy estate. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (citing 9 *Collier on Bankruptcy* 9019.03[1] (15th ed. Rev. 2001)). A settlement need not result in the best possible outcome for a debtor, but must not "fall beneath the lowest point in the range of reasonableness." *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

13. In deciding whether to approve a settlement, a bankruptcy court does not conduct a mini-trial on the merits or engage in an independent investigation into the reasonableness of the proposed settlement, but instead "relies heavily on the trustee" and the court generally defers to the trustee's judgment provided there is "a legitimate business justification" for the settlement. *Martin,* 91 F.3d at 395. Basic to the process of evaluating proposed settlements, then, is "the need to compare the terms of the compromise with the likely rewards of litigation." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 425 (1968). Courts will approve a debtor's settlement if the settlement is in the best interest of the estate. *See In re Marvel Entertainment Group, Inc.* 222 B.R. 243, 249 (D.Del. 1998).

B. *Application of Settlement Agreement to Relevant Factors*

14. At the heart of the Trustee's dispute with the Insurers is the construction and interpretation of the insurance policies. Insurance litigation is complex and fact-intensive. The

costs to litigate the disputes, standing alone, could cripple the bankruptcy estate, and the time required to prepare for and try the disputes requires resources that the Trustee does not have. The generator, while not critical to the Debtor's refining operations, provides a much-needed manner of cost-savings that could reduce the utility expenses and broaden the "crack spread" or net cash flow, thereby increasing the enterprise value of the Debtor's refinery. Additionally, a resolution to the disputes with the Insurers will enable the Trustee to resolve other disputes with its vendors, contractors and engineers who have provided services in connection with the STG project.

15. While the Trustee could resolve the insurance coverage disputes through litigation, such litigation, even if successful, may prove more detrimental to the estate. To succeed on the merits of the coverage dispute, the Trustee would have to demonstrate, on a line-by-line basis for each expense incurred to repair the generator. If certain costs are not covered under the policies, the Trustee would then have to establish the amount it should have to pay as "betterment" claims, which are subject to one deductible and possibly even two deductibles. Additionally, the Trustee would have to demonstrate that the July 20, 2009 and May 1, 2010 incidents are separate and distinct insurable events. These matters are difficult to prove, and the time and money needed to fully litigate these disputes with the Insurers could outweigh any benefit to the estates should the Trustee prove successful.

16. Considering all circumstances surrounding this Case and the Trustee's attempts to sell the Debtor's business and assets, the terms of the Settlement Agreement prove most fair and equitable. The Settlement Agreement provides for the fastest and most efficient manner of settling the insurance claims for the generator repairs.

17. The Settlement Agreement is the product of true arms' length negotiations between the Trustee and the Insurers. Other than the terms provided in the Settlement Agreement, there are no side agreements, arrangements or understandings between the Trustee and Insurers. The compromise presents a quick resolution with minimal exposure to the estate and provides the most efficient mechanism to ensure full payment of the expenses incurred for the completion of the STG repairs. On information and belief, the Settlement Agreement has the support of the Committee and Chase, the Debtor's pre- and post-petition lenders, who were involved in the mediation attempts and were kept apprised of the ongoing discussions regarding this settlement. For all of the foregoing reasons, the Trustee contends that the Settlement Agreement satisfies the applicable standards for such compromises and asks that it be approved by the Bankruptcy Court.

## V. NOTICE

18. Notice of this Motion will be served on all parties listed on the attached Limited Service List, which includes the United States Trustee, Chase Capital Corporation, JPMorgan Chase Bank, N.A., the Committee and all parties requesting notice of matters in this Case. Such notice complies with Bankruptcy Rule 2002 and this Court's prior orders authorizing service on such a limited basis.

## VI. PRAYER

WHEREFORE, the Trustee respectfully requests that the Court enter an order, substantially similar to the proposed order attached hereto as **Exhibit "2"** approving the Settlement Agreement and authorizing the Trustee to take such actions as necessary to consummate the Settlement Agreement; and for such other relief as is just and proper.

Dated: February 24, 2011            Respectfully submitted,

                                                   **COX SMITH MATTHEWS INCORPORATED**
                                                   1201 Elm Street, Suite 3300
                                                   Dallas, Texas 75270
                                                   (214) 698-7800
                                                   (214) 698-7899 (Fax)

                                                 By:  */s/ Mark E. Andrews*
                                                        Mark E. Andrews
                                                         State Bar No. 01253520
                                                         Carol E. Jendrzey
                                                         State Bar No. 10617420
                                                         Aaron M. Kaufman
                                                         State Bar No. 24060067

                                                 **SPECIAL COUNSEL TO ERIC J. MOELLER, CHAPTER 11 TRUSTEE**

# CERTIFICATE OF SERVICE

   The undersigned hereby certifies that on the 24th day of February, 2011, a true and correct copy of the foregoing document was filed with the Court and served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system and upon those parties listed on the attached service list by First Class United States Mail postage prepaid, unless otherwise noted. In addition to the foregoing, the undersigned has served true and correct copies of the foregoing motion and the proposed order to the following parties:

Kerry K. Brown
G. Brian Odom
Zelle, Hofmann, Voelbel, Mason & Gette, L.L.P.
901 Main Street, Suite 4000
Dallas, Texas 75202
***Counsel for the Insurance Carriers***

                 */s/ Mark E. Andrews*
                 Mark E. Andrews