

**EXHIBIT 1**

# RELEASE AND SETTLEMENT AGREEMENT

THIS RELEASE AND SETTLEMENT AGREEMENT (*"Agreement"*) is made and entered into by Eric J. Moeller, in his capacity as the chapter 11 trustee (*"Trustee"*) for AGE Refining, Inc. (*"AGE"*) and, collectively with the Trustee, the *"Claimants"*), and those certain persons and/or entities identified in Exhibit A, which is attached hereto and incorporated by reference for all purposes (collectively, *"Insurers"*). The Trustee and Insurers are each a *"Party"* hereto and may sometimes be collectively referred to as *"the Parties."*

## RECITALS

WHEREAS, AGE is insured under certain insurance policies identified on the schedule attached hereto as Exhibit A and incorporated by reference for all purposes (the *"Policies"*);

WHEREAS, AGE experienced a loss at its refinery located at 7811 S. Presa Street in San Antonio, Texas, occurring on July 20, 2009 and on May 1, 2010, as a result of failures of its steam turbine and power generator (the *"STG Incidents"*);

WHEREAS, during the applicable policy periods, Claimants have asserted claims (the *"Claims"*) under the Policies against the Insurers concerning the STG Incidents;

WHEREAS, on February 8, 2010, AGE filed a voluntary petition under chapter 11 of Title 11 of the United State Code (the *"Bankruptcy Code"*) in the U.S. Bankruptcy Court for the Western District of Texas, San Antonio Division (the *"Bankruptcy Court"*);

WHEREAS, the Trustee is the successor to AGE's interests in its property, the Claims, and the Policies pursuant to an order dated on or about July 8, 2010, wherein the Bankruptcy Court appointed the Trustee to administer AGE's bankruptcy estate;

WHEREAS, the Parties disagree as to the amount and scope of loss or damage resulting from the STG Incidents and the amount of insurance coverage applicable to the STG Incidents under the Policies;

WHEREAS, the Parties now desire to settle their disputes to avoid the expense and uncertainty of litigation; and

WHEREAS, the purpose of this Agreement is to settle: (1) all claims, controversies, and disputes among the Parties arising out of the STG Incidents, and (2) the resulting Claims submitted by the Claimant under the Policies.

NOW THEREFORE the Parties enter into this Agreement to discharge all claims, controversies or disputes arising from or related to the STG Incidents and/or the Claims, upon payment of the Settlement Amount as defined herein, according to the terms and conditions contained in this Agreement.

## AGREEMENT

In consideration of the covenants contained in this Agreement, the Parties agree as follows:

1. Mutual Releases

Subject to the Effective Date and the conditions in Paragraph 5 below, Claimants and Insurers, for themselves, their assigns, legal representatives, predecessors-in-interest, successors-in-interest, including without limitation any successor chapter 11 or chapter 7 bankruptcy trustee, and on behalf of all persons and entities claiming by, through or on their behalf, do hereby fully and forever release and discharge each other, and all related or affiliated companies, as well as their owners, officers, directors, representatives, agents, servants, employees, insurers and attorneys from any and all claims and causes of action of any kind, known or unknown, anticipated and unanticipated, accrued and unaccrued, past, present and future, which have been asserted or could have been asserted, arising out of or related to the STG Incidents and/or the Claims, including but not limited to any and all claims arising from breaches of the duty of good faith and fair dealing, violations of the applicable consumer protection acts and insurance codes, and all other extra-contractual claims.

Notwithstanding the foregoing, nothing in this Agreement shall be deemed to release any claims that may be asserted by, through or under the Claimants for events, losses, damages or incidents unrelated to the STG Incidents, including but not limited to, the truck rack incident that occurred on or about May 5, 2010.

Subject to approval of the Bankruptcy Court, this Agreement shall be a fully binding and complete settlement between Claimant and Insurers and all related or affiliated companies and all parties represented by or claiming through the Parties in relation to the STG Incidents and/or the Claims.

2. Payment of the Settlement Amount

At Closing (defined below) and as consideration for the releases, promises and covenants provided herein, Insurers shall deliver or cause to be delivered to the Trustee a one-time payment of Two Million, Four Hundred Thousand Dollars and No Cents ($2,400,000.00) (the "*Settlement Amount*"), with the Insurers each paying their respective allocated shares of the Settlement Amount as reflected in Exhibit A to this Agreement. Tender of the Settlement Amount shall be made at Closing in readily available funds pursuant to instructions and tax identification to be provided by Trustee at least ten (10) calendar days prior to Closing.

Payment of the Settlement Amount shall be net to Claimants and shall not be reduced by chargebacks, retrospective premiums, deductibles, self-insured retentions or any other potentially applicable reduction.

3. Approval of the Bankruptcy Court

Immediately upon execution of this Agreement, the Trustee shall take all steps that are reasonably necessary to obtain entry of an order by the Bankruptcy Court approving this Agreement (the "*Approval Order*"), including the preparation and filing of the appropriate pleadings and notices required by the applicable rules and provisions of the Bankruptcy Code. Upon entry of the Approval Order, the Parties shall be bound by the terms herein, except as provided in Paragraph 5 below.

4. Closing

Unless extended in writing by all Parties or the Approval Order is stayed by a written order of the Bankruptcy Court, closing of this Agreement shall occur within 30 calendar days, but no sooner than 14 calendar days, after this Agreement is approved by entry of the Approval Order by the Bankruptcy Court.

5. Effective Date of Releases

The releases provided in Paragraph 1 above shall become effective when all of the following conditions have been satisfied (the *"Effective Date"*):

 (a) This Agreement has been executed by all Parties;

 (b) This Agreement has been approved by the entry of the Approval Order; and

 (c) The Settlement Amount has been delivered to the Trustee in good funds.

6. Attorneys' Fees and Costs

Each Party hereto shall bear its own attorneys' fees and costs arising from or related to the STG Incidents, the Claims, this Agreement, and all matters referred to herein.

7. Warranty of Capacity to Execute Agreement

Claimants represent and warrant that, subject to Bankruptcy Court approval, they have authority to enter into this Agreement, and that Claimants have not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations, or causes of action referred to in this Agreement.

8. Disclaimer of Liability

Claimants agree and acknowledge that payment of the Settlement Amount specified in Paragraph 2 of this Agreement is to be considered a full and complete compromise of the Claims, that neither payment of this sum by Insurers nor the negotiations for this settlement (including all statements, admissions, or communications) by Insurers or their attorneys or representatives shall be considered admissions by any of said parties and same is hereby expressly denied by all Parties; and that no past or present wrongdoing on the part of Insurers shall be implied by such payment or negotiations. Further, the execution of this Agreement does not constitute in any manner whatsoever an admission of liability on the part of any Party hereto for any matters covered by this Agreement, and all such liability is hereby specifically denied.

9. Indemnity

Claimants agree to indemnify and hold harmless Insurers, their employees, officers, and all related or affiliated companies, as to any claim or cause of action released in Paragraph 1 herein that may be brought by any party claiming by, through or under Claimants.

### 10. Wording of this Agreement

The wording of this Agreement has been accepted by legal counsel for the Parties to this Agreement prior to it being signed by the Parties, and neither Claimants nor Insurers shall be entitled to have any wording of this Agreement construed against another party in the event that any dispute arises between them in connection with it.

### 11. Choice of Law

This Agreement is entered into in the State of Texas and shall be construed and interpreted in accordance with the laws of Texas.

### 12. Comprehension of Agreement

In entering into this Agreement, Claimants and Insurers represent that they have relied upon the advice of personally selected counsel, that the terms of the Agreement have been completely read and explained, and that those terms are fully understood and voluntarily agreed to.

### 13. Tax Consequences

It is further understood among the Parties that Claimants have not relied upon any representations, express or implied, made by Insurers or their attorneys or representatives, as to the possible tax consequences of this agreement and that Claimants hereby release Insurers and their attorneys and representatives from any and all liability in connection with any such tax consequences.

### 14. No Waiver

No waiver of any provision of this Agreement or any rights or obligations of either Party under this Agreement shall be effective, except pursuant to a written instrument signed by an authorized officer of the Party waiving compliance, and any such waiver shall be effective only in the specific instance and for the specific purpose stated in such writing.

### 15. Further Assurances

Each Party agrees to take or cause to be taken any and all action and to execute and deliver any and all additional documents, instruments and writings necessary to consummate, make effective and carry out the terms and provisions of this Agreement.

### 16. Entire Agreement and Successors in Interest

This Agreement contains the entire agreement among the Claimants and Insurers with regard to the matters set forth herein and, upon entry of the Approval Order, shall be binding upon and inure to the benefit of the executors, administrators, personal representatives, heirs, successors and assigns of each. There are no other understandings or agreements, verbal or otherwise, in relation thereto, among the Parties except as herein expressly set forth. The terms of this Agreement are contractual and not mere recitals.

17. <u>Headings</u>

The headings of the sections and subsections of this Agreement have been inserted for convenience of reference only and shall in no way restrict or otherwise modify any of the terms or provisions hereof or affect in any way the meaning or interpretation of this Agreement.

18. <u>Modifications</u>

This Agreement may not be modified, amended, revised, extended, supplemented, or terminated except in a writing signed by all of the Parties.

19. <u>Multiple Originals</u>

This Agreement may be executed by the Parties in multiple counterpart originals on the dates appearing in the acknowledgments attached hereto.

20. <u>Notices</u>

Except as otherwise provided herein, any notices required or permitted to be sent hereunder shall be delivered personally; mailed, certified mail, return receipt requested; sent by electronic mail; or delivered by overnight courier service to the following addresses, or such other address as either Party designates by written notice, and shall be deemed to have been given or made (i) upon delivery, if delivered personally; (ii) two business days after mailing, if mailed; (iii) one business day after transmission, if delivered by electronic mail, or (iv) one business day after delivery to the courier, if delivered by overnight courier service.

**If to the Trustee:**

Eric J. Moeller
7811 S. Presa Street
San Antonio, TX 78223
E-mail: ericjmoeller@gmail.com

**with a copy to:**

**Special Counsel for Trustee**
Mark E. Andrews
Aaron M. Kaufman
Cox Smith Matthews Incorporated
1201 Elm St., #3300
Dallas, TX 75270
E-mail: mandrews@coxsmith.com
E-mail: akaufman@coxsmith.com

-and-

Lee H. Shidlofsky
Visser Shidlofsky LLP
7200 N. Mopac Expwy, #430
Austin, Texas 78731
E-mail: lee@vsfirm.com

**If to the Insurers:**

Kerry K. Brown
G. Brian Odom
Zelle Hofmann Voelbel & Mason LLP
901 Main Street
Suite 4000
Dallas TX 75202
E-mail: kbrown@zelle.com
E-mail: bodom@zelle.com


*[Remainder of this page intentionally left blank; signature page to follow]*

## SIGNATURE PAGE

IN WITNESS WHEREOF, the undersigned have executed this Agreement.

**FOR ERIC J. MOELLER, TRUSTEE**    **FOR THE INSURERS**

Name:_____

Date:_____

Name: _G. BRIAN ODOM_

Title: _COUNSEL FOR INSURERS_

Date: _FEBRUARY 21, 2011_

# RELEASE AND SETTLEMENT AGREEMENT

## Exhibit A

| **Insurers** | **Policy Number** | **Allocated Share** |
|---|---|---|
| ACE American Insurance Company | EPRN05070089 | 25.00% |
| Certain Underwriters at Lloyd's, London, including the following Underwriters/Syndicates: 510 (Kiln Property); 33 (Hiscox); 807 (Kiln Mathers); 2000 (QBE); 1206 (Sagicor); 2623 (Beazley); 623 (Beazley); 2987 (Brit); and 780 (Advent) | Certificate Number NMB-ETU2009005 Contract Number B0702BB011460Y | 10.00% |
| Lexington Insurance Company | 33649454 | 16.67% |
| Liberty Mutual Insurance Company | 3D516340003 | 25.00% |
| National Union Fire Insurance Company of Pittsburgh, PA | 2638222 | 10.00% |
| St. Paul Surplus Lines Insurance Company | MU05597250 | 13.33% |
| | | **100.00%** |