# EXHIBIT 1

Execution Copy

## SETTLEMENT AND RELEASE AGREEMENT

THIS SETTLEMENT AND RELEASE AGREEMENT ("**Agreement**") is entered into by and among AGE Refining, Inc. ("**AGE**" or the "**Debtor**"), Overland Contracting, Inc. ("**Overland**") and Black & Veatch Corp. ("**B&V**")[1]. AGE, Overland and B&V are sometimes referenced individually as a "**Party**" and collectively as the "**Parties**."

## RECITALS

WHEREAS, on July 20, 2009, AGE experienced a catastrophic loss to its steam turbine and power generator, requiring substantial repair and/or replacement;

WHEREAS, AGE immediately thereafter engaged B&V pursuant to a technical services agreement under which B&V agreed to investigate the generator to determine a course of action for repair or replacement;

WHEREAS, on November 12, 2009, AGE executed that certain *Engineering, Procurement and Construction Agreement* (the "**EPC**" or "**Contract**") with Overland for the engineering, procurement, construction commissioning and start up services for the replacement of a damaged 5 MW steam turbine and generator set and its associated ancillaries (the "**STG**") with a similar used STG at AGE's facility in San Antonio, Texas (the "**Project**");

WHEREAS, on February 8, 2010, AGE filed a voluntary petition under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the U.S. Bankruptcy Court for the Western District of Texas, San Antonio Division (the "**Bankruptcy Court**");

WHEREAS, AGE's chapter 11 bankruptcy case is pending as Case Number 10-50501-lmc (the "**Bankruptcy Case**");

WHEREAS, the Project was still ongoing when AGE commenced its Bankruptcy Case;

WHEREAS, on February 9, 2010, AGE filed its *Motion Pursuant to 11 U.S.C. §§ 105(a) 363(b) and 503(b)(9) for Order Authorizing the Debtor to Pay Pre-petition Claims of Certain Critical Crude Oil Suppliers and Other Critical Vendors* (the "**Critical Vendor Motion**");

WHEREAS, Overland & B&V were deemed Critical Vendors and received payments from AGE under the order entered on February 11, 2010 granting the Critical Vendor Motion (the "**Critical Vendor Order**");

WHEREAS, AGE has been unable to resolve disagreements with Overland and B&V regarding, *inter alia*, whether AGE and/or Overland breached obligations under the Contract, whether continued performance by Overland was excused as a result of alleged breaches by AGE and/or AGE's failure to pay and to provide assurance of payment to Overland for the reasonable value of the goods and services provided to AGE on a post-petition basis (the "**Overland Dispute**");

---

[1] Overland and B&V are referred to interchangeably for purposes of this Agreement.

3348514.1

WHEREAS, on April 12, 2010, AGE filed that certain *Emergency Motion Pursuant to 11 U.S.C. §§ 105, 362, 363, 365, 541 and 542 to Compel Performance of Contractual Obligations and Turnover of Certain Files, Drawings and Property of the Estate from Overland Construction, Inc. and Black & Veatch Corp.* (the "**AGE Motion**") in the Bankruptcy Case;

WHEREAS, also on April 12, 2010, Overland filed that certain *Overland Contracting Inc.'s Motion to Compel Immediate Assumption or Rejection of Executory Contract or Alternatively to Establish Mechanism for Payment of Post-Petition Invoices* (the "**Overland Motion**") in the Bankruptcy Case;

WHEREAS, AGE subsequently alleged that work performed by B&V and/or Overland within the scope of the Contract was defective or otherwise deficient; and

WHEREAS, on July 6 2010, the Bankruptcy Court entered its Order approving the appointment of Eric Moeller as chapter 11 trustee of Age Refining, Inc. (the "**Trustee**");

WHEREAS, to avoid the cost, inconvenience and burdens associated with potential and future litigation, and without admitting any facts including liability on any particular claim or counterclaim, the Parties desire to compromise and settle all outstanding claims, counterclaims, cross-claims and objections relating to the Project, the Contract, the Critical Vendor Order, the Overland Dispute, the AGE Motion, the Overland Motion and all matters related to any of the foregoing (collectively, the "**Dispute**");

WHEREAS, on February 24, 2011, the AGE filed with the Bankruptcy Court a Motion Under Bankruptcy Rule 9019 to Approve Settlement and Release Agreement with Certain Insurers and Underwriters (the "Insurer Motion");

WHEREAS, under the Insurer Motion, AGE seeks approval of a settlement agreement with certain insurance companies (the "Insurance Settlement") whereby the companies will pay $2,400,000.00 to the Trustee in settlement of insurance claims relating to STG Incidents (as defined in the Insurance Settlement);

WHEREAS, AGE acknowledges and stipulates that Overland and B&V are third party beneficiaries of the Insurance Settlement;

WHEREAS, J.P. Morgan Chase Bank, N.A. and Chase Capital Corporation (collectively "Chase") are pre-petition and post-petition lenders to AGE and have certain pre and post-petition liens on substantially all of the Debtor's tangible and intangible assets;

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing premises and the mutual promises and covenants hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties have agreed and do hereby agree as follows:

**1.     RECITALS INCORPORATED HEREIN BY REFERENCE**

The above recitals are hereby incorporated into the terms and conditions of this Agreement by reference.

**2.     TURNOVER OF DRAWINGS**

Upon the Effective Date, B&V shall deliver to AGE all preliminary design drawings, plans, engineering reports, specifications, details, calculations, or estimates prepared by B&V in connection with the Project (the "Preliminary Drawings"). B&V and Overland hereby agree and stipulate that AGE shall hold a non-exclusive royalty-free license to use the Preliminary Drawings to the extent such use is limited to the operation, maintenance and/or repair of the STG. It is expressly recognized by the Parties that AGE has supervised the performance of certain services by third parties on the STG, without the permission, participation or involvement of Overland or B&V. The Preliminary Drawings shall be delivered by B&V without recourse, warranty or obligation of any kind whatsoever. Any use of the Preliminary Drawings by AGE shall be at AGE's sole risk and expense, without liability to B&V or Overland. B&V does not represent, warrant or express any opinion regarding whether it is appropriate for AGE to use or rely upon the Preliminary Drawings in connection with the operation, maintenance and/or repair of the STG. The Preliminary Drawings shall not be reused on extensions of the Project or on any other project. Any such reuse will be a breach of the license granted herein. AGE shall defend, indemnify, and hold harmless Overland, B&V and its subcontractors, vendors, employees, agents, officers and/or assigns, their respective employees, agents, officers, partners and directors and anyone else acting for or on behalf of them and any of their respective assigns against all claims, losses, damages, injuries, and expenses, including attorneys' fees, arising out of or resulting from AGE's use of the Preliminary Drawings.

**3.     CASH PAYMENT**

Upon the execution of this Agreement and receipt by the Trustee of the Settlement Amount (as that term is defined in the Insurance Settlement), the Debtor shall immediately deliver to B&V a payment of One Million, Three Hundred Twenty-Five Thousand Dollars ($1,325,000.00) (the "**Cash Payment**") in readily available funds from the Settlement Amount as consideration for the releases and all other agreements of Overland and B&V herein. Subject to delivery of the Cash Payment to B&V, all rights, claims and causes of action, including rights to funds received or to be received, arising under the Insurance Settlement, up to the amount of the Cash Payment, shall be and are hereby assigned to Overland and B&V (the "Assignment of Rights"). The Cash Payment shall be in the form of a wire transfer to:

| | |
|---|---|
| Bank: | JP Morgan Chase Bank, NA, |
| | 712 Main at Rusk Houston, Texas 77002 |
| ABA Routing #: | 021000021 |
| Benefit of: | Overland Contracting, Inc., 516662.000002; Attorney, Tye Hancock |
| Account #: | 054-00104844 |

The Cash Payment shall be delivered in satisfaction of the Allowed Administrative Claim

(defined below), and shall be free of any liens, claims or encumbrances.

### 4.   LIENS OF CHASE

Upon execution of this Agreement, Chase agrees, stipulates and consents that Chase's liens, rights and claims against AGE shall not attach to any payments made by the insurance company under the Insurance Settlement to the extent of the Cash Payment. The Assignment of Rights in Paragraph 3 is free and clear of Chase's liens, rights and claims against AGE.

### 5.   ALLOWED CLAIMS

As a condition and as consideration for the releases and other agreements of Overland and B&V herein, AGE shall grant to Overland and B&V in the Bankruptcy Case the following claims:

      a.    Allowed Unsecured Claim. An allowed general unsecured non-priority claim in the amount of Four Hundred Fifty Thousand Dollars ($450,000.00) (the "**Allowed Unsecured Claim**"); and

      b.    Administrative Claim. An allowed unsecured priority claim pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code in the amount of One Million, Three Hundred Twenty-Five Thousand Dollars ($1,325,000.00) (the "**Allowed Administrative Claim**"). Upon receipt of the cash payment described in paragraph 3 above, the Allowed Administrative Claim shall be deemed satisfied in full.

The Allowed Administrative Claim and the Allowed Unsecured Claim shall be allowed under the same order approving this Agreement or through separate orders entered contemporaneously with the order approving this Agreement, in a form acceptable to B&V, by the Bankruptcy Court in the Bankruptcy Case.

### 6.   RELEASES BY OVERLAND AND BLACK & VEATCH

Upon the Effective Date, B&V and Overland on behalf of themselves, and their respective owners, successors, affiliates, assigns, officers, directors, employees, legal representatives, insurers, attorneys and all persons, natural or corporate, in privity with them or claiming through them (collectively, the "**Overland Parties**") shall be deemed to forever release, acquit, and discharge AGE and, its owners, successors, assigns, affiliates, officers, directors, employees, legal representatives, insurers, attorneys and all persons, natural or corporate, in privity with them (collectively, the "**AGE Parties**") and JP Morgan Chase Bank, N.A., Chase Capital Corporation and their owners, successors, assigns, affiliates, officers, directors, employees, legal representatives, insurers, attorneys and all persons, natural or corporate, in privity with them from any and all claims and causes of action of any kind whatsoever, at common law, statutory or otherwise, which any of the Overland Parties have or might have, or which may hereafter accrue in the future, whether known or unknown, directly or indirectly attributable to, or arising out of or in any way related to the Contract and the Dispute, *provided that*, the foregoing shall neither release nor excuse any of the Parties from their respective obligations under this Agreement.

Further, to the extent that Overland or B&V has taken any steps to record a lien affidavit or to otherwise perfect a lien against AGE, its property or property of AGE's bankruptcy estate under applicable law relating to the Contract or the Overland Dispute, B&V or Overland, as applicable, shall deliver to AGE a lien release in a form reasonably acceptable to AGE, and as may be necessary for AGE or its successor to record in the Bexar County property records or any other office where such a lien affidavit or similar document may be recorded. B&V shall also deliver to AGE a list of all counties and other locations where B&V and/or Overland have filed liens against AGE, together with the recording information thereon.

7. **RELEASES BY AGE**

Upon the Effective Date, the AGE Parties shall be deemed to forever release, acquit, and discharge the Overland Parties from any and all claims and causes of action of any kind whatsoever, at common law, statutory or otherwise, which any of the AGE Parties have or might have, or which may hereafter accrue in the future, whether known or unknown, directly or indirectly attributable to, or arising out of or in any way related to the Contract, the Dispute or any work performed by the Overland Parties for AGE; *provided that*, the foregoing shall neither release nor excuse any of the Parties from their respective obligations under this Agreement. The foregoing release includes, but is not limited to, a release of any and all claims or causes of action of AGE against the Overland Parties arising under sections 544, 545, 547, 548, 549, 550, 551, 553 of the Bankruptcy Code.

8. **TERMINATION OF THE CONTRACT**

Upon the Effective Date, the Contract shall be deemed terminated and annulled, and any obligations thereunder shall be fully and forever released, acquitted, and discharged. Upon the Effective Date, this Agreement shall solely govern the obligations and remedies of the Parties forthwith, and the Contract shall be deemed terminated and annulled regardless of any alleged breach or violation of this Agreement by any party. The AGE Motion and the Overland Motion shall be dismissed with prejudice.

9. **CLOSING AND EFFECTIVE DATE**

As used herein the term "Effective Date" shall mean the first day following the occurrence and satisfaction of all of the following conditions:

    a.    This Agreement has been signed by each Party and Chase;

    b.    The Cash Payment has been delivered to B&V; and

    c.    The Bankruptcy Court has entered an order approving this Agreement and, whether under the same or separate orders, has allowed the Allowed Unsecured Claim as set forth in paragraph 4 herein. And, all such orders shall be final and non-appealable.[2]

---

[2] The condition of finality may be waived in writing by B&V in its sole discretion.

**SETTLEMENT AGREEMENT**
3348514.1

## 10.    BANKRUPTCY COURT APPROVAL

The Trustee shall file with the Bankruptcy Court and vigorously prosecute, on an expedited basis, a motion to approve this Agreement under Federal Rule of Bankruptcy Procedure 9019.   In connection therewith, the Trustee shall prosecute and obtain the allowance of the Allowed Administrative Claim and the Allowed Unsecured Claim.   The hearing on AGE's motion to approve this Agreement and the Allowed Administrative Claim and Allowed Unsecured Claim shall be heard contemporaneously with the Insurer Motion.   The Trustee shall not seek approval of the Insurance Settlement to the extent this Agreement is not approved contemporaneously therewith.

## 11.    MISCELLANEOUS

a.    Release Not Admission.    Except as expressly provided herein, the execution of this Agreement does not constitute in any manner whatsoever an admission of liability on the part of any Party hereto for any matters covered by this Agreement, and all such liability is hereby specifically denied.

b.    Governing Law.    This Agreement shall be construed and interpreted in accordance with the laws of the State of Texas, without regard to principles of conflict of laws.

c.    Entire Agreement.    This Agreement represents the entire agreement and understanding between the Parties with respect to the Dispute and any other matters related thereto, and supersedes any and all prior and contemporaneous agreements, representations and negotiations relating to those matters in whole or in part.    This Agreement may be modified or amended only by a writing signed by an authorized officer of all Parties.    Any nonmaterial term of this Agreement may be modified or amended by the Parties in writing, without further Court approval.

d.    No Prior Assignment.    Each Party hereby represents and warrants to the other Parties that it has not assigned or transferred any rights, claims or causes of action arising from the Contract or Dispute to any person or entity and that each Party is the sole owner of all such rights, claims and causes of action.

e.    Waiver.    No waiver of any provision of this Agreement or any rights or obligations of either Party under this Agreement shall be effective, except pursuant to a written instrument signed by an authorized officer of the Party waiving compliance, and any such waiver shall be effective only in the specific instance and for the specific purpose stated in such writing.

f.    Mutual Construction.    The Agreement shall not be construed against the Party preparing it, but shall be construed as if all of the Parties jointly prepared the Agreement, and any uncertainty or ambiguity shall not be interpreted against any one Party.

g.    Costs.    The Parties shall each bear their own costs, including attorneys' fees and any other fees incurred in connection with the negotiation of this Agreement.   If

any legal action is brought for the enforcement of the Agreement, or because of an alleged breach, dispute, default, or material misrepresentation in connection with this Agreement, the successful or prevailing Party shall be entitled to recover all of its attorneys' fees and costs incurred in connection with such action, in addition to any other relief to which the Party may be entitled.

      h.    <u>Assignment</u>.  No Party hereto may assign any of its rights or obligations under this Agreement without the prior written consent of the other Parties, which consent may be withheld in the sole discretion of such Parties.

      i.    <u>Successors</u>.  This Agreement shall be binding on, and inure to the benefit of, the successors of the Parties.

      j.    <u>Further Assurances</u>.  Each Party agrees to take or cause to be taken any and all action and to execute and deliver any and all additional documents, instruments and writings necessary to consummate, make effective and carry out the terms and provisions of this Agreement.

      k.    <u>Authority to Execute Agreement</u>.  Each Party, and each person executing this Agreement on its behalf, represents and warrants that the person executing the Agreement is legally competent and has the capacity, authority and right to execute this Agreement on behalf of the respective Party.

      l.    <u>Mutual and Voluntary Agreement</u>.  The Parties acknowledge that they are entering into this Agreement knowingly, freely and voluntarily and that the consideration received by each of them hereunder is fair and adequate. The Parties acknowledge that they have been represented by independent counsel of their choice, or have had the opportunity to retain independent counsel of their choice, with respect to negotiation of this Agreement.  The Parties declare that they fully understand all of the terms and provisions of this Agreement and regard the same to be fair and reasonable. The Parties further represent and state that no promise or inducement has been made or offered except as set forth in this Agreement and no Party has the right to, nor does, rely on any prior statements of any kind in agreeing to or executing this Agreement.

      m.    <u>Headings</u>. The headings of the sections and subsections of this Agreement have been inserted for convenience of reference only and shall in no way restrict or otherwise modify any of the terms or provisions hereof or affect in any way the meaning or interpretation of this Agreement.

      n.    <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts with such counterparts constituting a single Agreement.  In addition, this Agreement may be executed via facsimile signature.

*[Remainder of this page intentionally left blank; signature page to follow]*

## Signature Page

o.    IN  WITNESS  WHEREOF,  the  undersigned  have  executed  this Agreement.

**AGE REFINING, INC.**

By: _____

Name:_____

Title: _____

Date: _____

**OVERLAND CONTRACTING, INC. AND BLACK & VEATCH CORP.**

By: _____

Name:_____

Title: _____

Date: _____

**CHASE CAPITAL CORPORATION**

By: _____

Name:_____

Title: _____

Date: _____

**JP MORGAN CHASE BANK, N.A.**

By: _____

Name:_____

Title: _____

Date: _____

**SETTLEMENT AGREEMENT**
3348514.1

# EXHIBIT 2

## RELEASE AND SETTLEMENT AGREEMENT

THIS RELEASE AND SETTLEMENT AGREEMENT (*"Agreement"*) is made and entered into by Eric J. Moeller, in his capacity as the chapter 11 trustee (*"Trustee"*) for AGE Refining, Inc. (*"AGE"* and, collectively with the Trustee, the *"Claimants"*), and those certain persons and/or entities identified in Exhibit A, which is attached hereto and incorporated by reference for all purposes (collectively, *"Insurers"*). The Trustee and Insurers are each a *"Party"* hereto and may sometimes be collectively referred to as *"the Parties."*

## RECITALS

WHEREAS, AGE is insured under certain insurance policies identified on the schedule attached hereto as Exhibit A and incorporated by reference for all purposes (the *"Policies"*);

WHEREAS, AGE experienced a loss at its refinery located at 7811 S. Presa Street in San Antonio, Texas, occurring on July 20, 2009 and on May 1, 2010, as a result of failures of its steam turbine and power generator (the *"STG Incidents"*);

WHEREAS, during the applicable policy periods, Claimants have asserted claims (the *"Claims"*) under the Policies against the Insurers concerning the STG Incidents;

WHEREAS, on February 8, 2010, AGE filed a voluntary petition under chapter 11 of Title 11 of the United State Code (the *"Bankruptcy Code"*) in the U.S. Bankruptcy Court for the Western District of Texas, San Antonio Division (the *"Bankruptcy Court"*);

WHEREAS, the Trustee is the successor to AGE's interests in its property, the Claims, and the Policies pursuant to an order dated on or about July 8, 2010, wherein the Bankruptcy Court appointed the Trustee to administer AGE's bankruptcy estate;

WHEREAS, the Parties disagree as to the amount and scope of loss or damage resulting from the STG Incidents and the amount of insurance coverage applicable to the STG Incidents under the Policies;

WHEREAS, the Parties now desire to settle their disputes to avoid the expense and uncertainty of litigation; and

WHEREAS, the purpose of this Agreement is to settle: (1) all claims, controversies, and disputes among the Parties arising out of the STG Incidents, and (2) the resulting Claims submitted by the Claimant under the Policies.

NOW THEREFORE the Parties enter into this Agreement to discharge all claims, controversies or disputes arising from or related to the STG Incidents and/or the Claims, upon payment of the Settlement Amount as defined herein, according to the terms and conditions contained in this Agreement.

## AGREEMENT

In consideration of the covenants contained in this Agreement, the Parties agree as follows:

1.    <u>Mutual Releases</u>

Subject to the Effective Date and the conditions in Paragraph 5 below, Claimants and Insurers, for themselves, their assigns, legal representatives, predecessors-in-interest, successors-in-interest, including without limitation any successor chapter 11 or chapter 7 bankruptcy trustee, and on behalf of all persons and entities claiming by, through or on their behalf, do hereby fully and forever release and discharge each other, and all related or affiliated companies, as well as their owners, officers, directors, representatives, agents, servants, employees, insurers and attorneys from any and all claims and causes of action of any kind, known or unknown, anticipated and unanticipated, accrued and unaccrued, past, present and future, which have been asserted or could have been asserted, arising out of or related to the STG Incidents and/or the Claims, including but not limited to any and all claims arising from breaches of the duty of good faith and fair dealing, violations of the applicable consumer protection acts and insurance codes, and all other extra-contractual claims.

Notwithstanding the foregoing, nothing in this Agreement shall be deemed to release any claims that may be asserted by, through or under the Claimants for events, losses, damages or incidents unrelated to the STG Incidents, including but not limited to, the truck rack incident that occurred on or about May 5, 2010.

Subject to approval of the Bankruptcy Court, this Agreement shall be a fully binding and complete settlement between Claimant and Insurers and all related or affiliated companies and all parties represented by or claiming through the Parties in relation to the STG Incidents and/or the Claims.

2.    <u>Payment of the Settlement Amount</u>

At Closing (defined below) and as consideration for the releases, promises and covenants provided herein, Insurers shall deliver or cause to be delivered to the Trustee a one-time payment of Two Million, Four Hundred Thousand Dollars and No Cents ($2,400,000.00) (the "**Settlement Amount**"), with the Insurers each paying their respective allocated shares of the Settlement Amount as reflected in Exhibit A to this Agreement. Tender of the Settlement Amount shall be made at Closing in readily available funds pursuant to instructions and tax identification to be provided by Trustee at least ten (10) calendar days prior to Closing.

Payment of the Settlement Amount shall be net to Claimants and shall not be reduced by chargebacks, retrospective premiums, deductibles, self-insured retentions or any other potentially applicable reduction.

3.    <u>Approval of the Bankruptcy Court</u>

Immediately upon execution of this Agreement, the Trustee shall take all steps that are reasonably necessary to obtain entry of an order by the Bankruptcy Court approving this Agreement (the "**Approval Order**"), including the preparation and filing of the appropriate pleadings and notices required by the applicable rules and provisions of the Bankruptcy Code. Upon entry of the Approval Order, the Parties shall be bound by the terms herein, except as provided in Paragraph 5 below.

4.    Closing

Unless extended in writing by all Parties or the Approval Order is stayed by a written order of the Bankruptcy Court, closing of this Agreement shall occur within 30 calendar days, but no sooner than 14 calendar days, after this Agreement is approved by entry of the Approval Order by the Bankruptcy Court.

5.    Effective Date of Releases

The releases provided in Paragraph 1 above shall become effective when all of the following conditions have been satisfied (the "*Effective Date*"):

      (a)    This Agreement has been executed by all Parties;

      (b)    This Agreement has been approved by the entry of the Approval Order; and

      (c)    The Settlement Amount has been delivered to the Trustee in good funds.

6.    Attorneys' Fees and Costs

Each Party hereto shall bear its own attorneys' fees and costs arising from or related to the STG Incidents, the Claims, this Agreement, and all matters referred to herein.

7.    Warranty of Capacity to Execute Agreement

Claimants represent and warrant that, subject to Bankruptcy Court approval, they have authority to enter into this Agreement, and that Claimants have not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations, or causes of action referred to in this Agreement.

8.    Disclaimer of Liability

Claimants agree and acknowledge that payment of the Settlement Amount specified in Paragraph 2 of this Agreement is to be considered a full and complete compromise of the Claims, that neither payment of this sum by Insurers nor the negotiations for this settlement (including all statements, admissions, or communications) by Insurers or their attorneys or representatives shall be considered admissions by any of said parties and same is hereby expressly denied by all Parties; and that no past or present wrongdoing on the part of Insurers shall be implied by such payment or negotiations. Further, the execution of this Agreement does not constitute in any manner whatsoever an admission of liability on the part of any Party hereto for any matters covered by this Agreement, and all such liability is hereby specifically denied.

9.    Indemnity

Claimants agree to indemnify and hold harmless Insurers, their employees, officers, and all related or affiliated companies, as to any claim or cause of action released in Paragraph 1 herein that may be brought by any party claiming by, through or under Claimants.

10.    Wording of this Agreement

The wording of this Agreement has been accepted by legal counsel for the Parties to this Agreement prior to it being signed by the Parties, and neither Claimants nor Insurers shall be entitled to have any wording of this Agreement construed against another party in the event that any dispute arises between them in connection with it.

11.    Choice of Law

This Agreement is entered into in the State of Texas and shall be construed and interpreted in accordance with the laws of Texas.

12.    Comprehension of Agreement

In entering into this Agreement, Claimants and Insurers represent that they have relied upon the advice of personally selected counsel, that the terms of the Agreement have been completely read and explained, and that those terms are fully understood and voluntarily agreed to.

13.    Tax Consequences

It is further understood among the Parties that Claimants have not relied upon any representations, express or implied, made by Insurers or their attorneys or representatives, as to the possible tax consequences of this agreement and that Claimants hereby release Insurers and their attorneys and representatives from any and all liability in connection with any such tax consequences.

14.    No Waiver

No waiver of any provision of this Agreement or any rights or obligations of either Party under this Agreement shall be effective, except pursuant to a written instrument signed by an authorized officer of the Party waiving compliance, and any such waiver shall be effective only in the specific instance and for the specific purpose stated in such writing.

15.    Further Assurances

Each Party agrees to take or cause to be taken any and all action and to execute and deliver any and all additional documents, instruments and writings necessary to consummate, make effective and carry out the terms and provisions of this Agreement.

16.    Entire Agreement and Successors in Interest

This Agreement contains the entire agreement among the Claimants and Insurers with regard to the matters set forth herein and, upon entry of the Approval Order, shall be binding upon and inure to the benefit of the executors, administrators, personal representatives, heirs, successors and assigns of each. There are no other understandings or agreements, verbal or otherwise, in relation thereto, among the Parties except as herein expressly set forth. The terms of this Agreement are contractual and not mere recitals.

17. <u>Headings</u>

The headings of the sections and subsections of this Agreement have been inserted for convenience of reference only and shall in no way restrict or otherwise modify any of the terms or provisions hereof or affect in any way the meaning or interpretation of this Agreement.

18. <u>Modifications</u>

This Agreement may not be modified, amended, revised, extended, supplemented, or terminated except in a writing signed by all of the Parties.

19. <u>Multiple Originals</u>

This Agreement may be executed by the Parties in multiple counterpart originals on the dates appearing in the acknowledgments attached hereto.

20. <u>Notices</u>

Except as otherwise provided herein, any notices required or permitted to be sent hereunder shall be delivered personally; mailed, certified mail, return receipt requested; sent by electronic mail; or delivered by overnight courier service to the following addresses, or such other address as either Party designates by written notice, and shall be deemed to have been given or made (i) upon delivery, if delivered personally; (ii) two business days after mailing, if mailed; (iii) one business day after transmission, if delivered by electronic mail, or (iv) one business day after delivery to the courier, if delivered by overnight courier service.

**If to the Trustee:**

Eric J. Moeller
7811 S. Presa Street
San Antonio, TX 78223
E-mail: ericjmoeller@gmail.com

**with a copy to:**

**Special Counsel for Trustee**
Mark E. Andrews
Aaron M. Kaufman
Cox Smith Matthews Incorporated
1201 Elm St., #3300
Dallas, TX 75270
E-mail: mandrews@coxsmith.com
E-mail: akaufman@coxsmith.com

-and-

Lee H. Shidlofsky
Visser Shidlofsky LLP
7200 N. Mopac Expwy, #430
Austin, Texas 78731
E-mail: lee@vsfirm.com

**If to the Insurers:**

Kerry K. Brown
G. Brian Odom
Zelle Hofmann Voelbel & Mason LLP
901 Main Street
Suite 4000
Dallas TX 75202
E-mail:  kbrown@zelle.com
E-mail:  bodom@zelle.com

*[Remainder of this page intentionally left blank; signature page to follow]*

## SIGNATURE PAGE

IN WITNESS WHEREOF, the undersigned have executed this Agreement.

**FOR ERIC J. MOELLER, TRUSTEE**          **FOR THE INSURERS**

_____          _____

Name:_____          Name: G. BRIAN ODOM

Date: _____          Title: COUNSEL FOR INSURERS

                                         Date: FEBRUARY 21, 2011

## RELEASE AND SETTLEMENT AGREEMENT

### Exhibit A

| Insurers | Policy Number | Allocated Share |
|---|---|---|
| ACE American Insurance Company | EPRN05070089 | 25.00% |
| Certain Underwriters at Lloyd's, London, including the following Underwriters/Syndicates: 510 (Kiln Property); 33 (Hiscox); 807 (Kiln Mathers); 2000 (QBE); 1206 (Sagicor); 2623 (Beazley); 623 (Beazley); 2987 (Brit); and 780 (Advent) | Certificate Number NMB-ETU2009005 Contract Number B0702BB011460Y | 10.00% |
| Lexington Insurance Company | 33649454 | 16.67% |
| Liberty Mutual Insurance Company | 3D516340003 | 25.00% |
| National Union Fire Insurance Company of Pittsburgh, PA | 2638222 | 10.00% |
| St. Paul Surplus Lines Insurance Company | MU05597250 | 13.33% |
| | | **100.00%** |

# EXHIBIT 3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| AGE REFINING, INC. | § | CHAPTER 11 CASE |
| | § | |
| Debtor. | § | CASE NO. 10-50501-lmc |
| | § | |
| | § | |
| | § | |

ORDER GRANTING THE MOTION UNDER BANKRUPTCY RULE 9019
AND APPROVING THE SETTLEMENT AND RELEASE AGREEMENT
<u>WITH BLACK & VEATCH CORPORATION AND OVERLAND CONTRACTING, INC.</u>

THIS MATTER having come before the Court upon the *Motion Under Bankruptcy Rule 9019 to Approve Settlement and Release Agreement with Black & Veatch Corp. and Overland Contracting, Inc.* (the "Motion"[1]) [Doc. No. 845] filed by Eric J. Moeller, Chapter 11 Trustee (the "Trustee") for AGE Refining, Inc. (the "Debtor"), the above referenced debtor and debtor-in-possession, it appearing that: (i) the Court has jurisdiction over this matter; (ii) due and proper notice of the Motion has been provided as required by the applicable Federal and Local Rules of Bankruptcy Procedure; (iii) no objections to the Motion have been raised by any parties in

---

[1] Capitalized terms not defined in this Order shall have the meaning ascribed to them in the Settlement and Release Agreement (the "Settlement Agreement"), an executed copy of which is attached hereto as **Exhibit 1**.

3314449.3

interest; (iv) the standards of Federal Rule of Bankruptcy Procedure 9019(a) have been satisfied; and (v) the relief requested in the Motion is in the best interest of the Debtor and its estate and creditors, after due deliberation and sufficient cause shown, the Court hereby **ORDERS** the following:

1.      The Motion is hereby GRANTED in all respects and set forth herein;

2.      The terms and conditions of the Settlement Agreement are fair and equitable, present a reasonable compromise for the bankruptcy estate, and are in the best interest of the Debtor's estate and creditors; and it is the Court's determination that the Settlement Agreement should be and hereby is APPROVED;

3.      The Trustee, Black & Veatch Corporation and Overland Contracting, Inc. are hereby authorized and directed to take such actions as necessary to consummate the Settlement Agreement.  In particular, the Trustee is authorized to pay and shall pay or cause to be paid to Black & Veatch Corporation the sum of One Million Three Hundred Twenty-Five Thousand and No/100 Dollars ($1,325,000.00) in cash from the funds to be delivered to the Debtor from the Insurers pursuant to that Settlement Agreement filed with the Court on February 24, 2011 (the "Insurance Settlement").

4.      The funds to be delivered to Black & Veatch Corporation from the Insurance Settlement and the Assignment of Rights (as defined in the Settlement Agreement) shall be free and clear of the liens, rights and claims of Chase, the Debtor's lender, and other liens, claim and encumbrances.

5.      Black & Veatch Corporation and Overland Contracting Inc., jointly, are hereby allowed a general unsecured non-priority claim in the amount of Four Hundred Fifty Thousand and no/100 dollars ($450,000.00).

6.      Subject to the terms and conditions of the Settlement Agreement, Black & Veatch Corporation and Overland Contracting Inc., jointly, are hereby allowed an administrative claim pursuant to 11 U.S.C. § 503(b) in the amount of One Million Three Hundred Twenty-Five Thousand and no/100 dollars ($1,325,000.00), which shall be satisfied by the Cash Payment described in the Settlement Agreement and authorized by this Order.

7.      The terms and conditions of the Settlement Agreement, including the payment of the Cash Payment and the effectiveness of the mutual releases provided therein, shall be binding on the Trustee, Black & Veatch Corporation and Overland Contracting, Inc., for themselves, their assigns, legal representatives, predecessors-in-interest, successors-in-interest, including without limitation any successor chapter 11 or chapter 7 bankruptcy trustee, and on behalf of all persons and entities claiming by, through or on their behalf.

8.      The Court shall retain jurisdiction over this Order and the Settlement Agreement and any disputes arising from the consummation, interpretation and enforcement thereof.

###

**Order submitted by:**

**COX SMITH MATTHEWS INCORPORATED**

Mark E. Andrews
State Bar No. 01253520
Aaron M. Kaufman
State Bar No. 24060067
1201 Elm Street, Suite 3300
Dallas, Texas 75270
(214) 698-7800
(214) 698-7899 (Fax)

-and-

Carol E. Jendrzey
State Bar No. 10617420
Cox Smith Matthews Incorporated
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
(210) 554-5500
(210) 226-8395 (Fax)

*SPECIAL COUNSEL TO ERIC J. MOELLER,*
*CHAPTER 11 TRUSTEE*

# EXHIBIT 4

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **CHAPTER 11 CASE** |
| **AGE REFINING, INC.** | § | |
| | § | **CASE NO. 10-50501-lmc** |
| **Debtor.** | § | |
| | § | |
| | § | |
| | § | |

## ORDER GRANTING THE MOTION UNDER
## BANKRUPTCY RULE 9019 AND APPROVING THE SETTLEMENT AND
## RELEASE AGREEMENT WITH CERTAIN INSURERS AND UNDERWRITERS

THIS MATTER having come before the Court upon the *Motion Under Bankruptcy Rule 9019 to Approve Settlement and Release Agreement with Certain Insurers and Underwriters* (the "Motion"[1]) [Doc. No. 839], filed by Eric J. Moeller, Chapter 11 Trustee (the "Trustee") for AGE Refining, Inc. (the "Debtor"), the above referenced debtor and debtor-in-possession, it appearing that: (i) the Court has jurisdiction over this matter; (ii) due and proper notice of the Motion has been provided as required by the applicable Federal and Local Rules of Bankruptcy Procedure; (iii) no objections to the Motion have been raised by any parties in interest; (iv) the standards of

---

[1] Capitalized terms not defined in this Order shall have the meaning ascribed to them in the Settlement and Release Agreement, an executed copy of which is attached hereto as **Exhibit 1.**

3312943.1

Federal Rule of Bankruptcy Procedure 9019(a) have been satisfied; and (v) the relief requested in the Motion is in the best interest of the Debtor and its estate and creditors, after due deliberation and sufficient cause shown, the Court hereby **ORDERS** the following:

1.     The Motion is hereby GRANTED in all respects and set forth herein;

2.     The terms and conditions of the Settlement Agreement are fair and equitable, present a reasonable compromise for the bankruptcy estate, and are in the best interest of the Debtor's estate and creditors; and it is the Court's determination that the Settlement Agreement should be and hereby is APPROVED;

3.     The Trustee and Insurers are hereby authorized and directed to take such actions as necessary to consummate the Settlement Agreement.

4.     The terms of the Settlement Agreement, including the mutual releases provided therein, shall be binding on the Trustee and the Insurers, for themselves, their assigns, legal representatives, predecessors-in-interest, successors-in-interest, including without limitation any successor chapter 11 or chapter 7 bankruptcy trustee, and on behalf of all persons and entities claiming by, through or on their behalf.

5.     The Court shall retain jurisdiction over this Order and the Settlement Agreement and any disputes arising from the consummation, interpretation and enforcement thereof.

###

**COX SMITH MATTHEWS INCORPORATED**

Mark E. Andrews
State Bar No. 01253520
Aaron M. Kaufman
State Bar No. 24060067
1201 Elm Street, Suite 3300
Dallas, Texas 75270
(214) 698-7800
(214) 698-7899 (Fax)

-and-

Carol E. Jendrzey
State Bar No. 10617420
Cox Smith Matthews Incorporated
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
(210) 554-5500
(210) 226-8395 (Fax)

*ATTORNEYS FOR ERIC J. MOELLER,*
*CHAPTER 11 TRUSTEE*

# Exhibit "1"

**[Settlement and Release Agreement (Executed)]**

# EXHIBIT 5

**AGE Refining, Inc.**
**STG Settlement**
**3/3/2011**

| | | |
|---|---|---:|
| Total Cost of STG July 20, 2009 Incident | $ | 9,328,386.04 |
| Total Cost of STG May 1, 2010 Incident | $ | 627,308.28 |
| Total Cost to Replace the Steam Turbine Generator | $ | 9,955,694.32 |
| Proceed Received from Insurance Underwriters | $ | (4,790,686.04) |
| Net AGE Costs After Proceeds | $ | 5,165,008.28 |
| Write off B&V | $ | (1,022,098.95) |
| Net AGE Costs after write off of disputed amount | $ | 4,142,909.33 |
| Costs AGE incurred not covered by Insurance | | |
| Deductible for the July 2009 Incident | $ | (300,000.00) |
| Deductible for the May 2010 Incident | $ | (432,000.00) |
| AGE Betterments | $ | (946,176.00) |
| | $ | (1,678,176.00) |
| Net AGE Costs before final Insurance Settlement | $ | 2,464,733.33 |
| AGE Insurance Final Settlement Agreement | $ | (2,400,000.00) |
| Non reimbursed costs to AGE | $ | 64,733.33 |

**Unsecured Claim by B&V for $450K

# EXHIBIT 6

# EXHIBIT A
## REVISED BID PROCEDURES

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| | § | |
| AGE REFINING, INC. | § | Case No. 10-50501 |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |

### NOTICE OF AUCTION AND REVISED BID PROCEDURES

PLEASE TAKE NOTICE OF THE FOLLOWING:

**A.     The Bid Procedures Order**

1.     On December 21, 2010, the Honorable Leif M. Clark, United States Bankruptcy Judge for the Western District of Texas, San Antonio Division (the "Bankruptcy Court") entered its *Order (A) Approving the Procedures for Soliciting Offers for Substantially All of the Estate's Assets; (B) Approving the Form and Manner of Notice; (C) Authorizing the Trustee to Conduct an Auction to Determine the Highest and Best Offer; (D) Approving the Procedures for Determining Cure Amounts for Assumed Contracts and Leases; and (E) Granting Related Relief* (the "Original Bid Procedures Order"), which was amended of March 4, 2011 by the Bankruptcy Court's *Amended Order (A) Approving the Procedures for Soliciting Offers for Substantially All of the Estate's Assets; (B) Approving the Form and Manner of Notice; (C) Authorizing the Trustee to Conduct an Auction to Determine the Highest and Best Offer; (D) Approving the Procedures for Determining the Cure Amount for Assumed Contracts and Leases; and (E) Granting Related Relief* (the "Amended Bid Procedures Order") .

2.     Pursuant to the Amended Bid Procedures Order, Eric J. Moeller, the duly appointed Chapter 11 Trustee in the above-captioned case (the "Trustee") is authorized to

conduct an auction (the "Auction") on **April 5 and April 6, 2011 beginning April 5, 2011 at 10:00 a.m.** in the offices of Langley & Banack, Inc., 745 E. Mulberry, Suite 900, San Antonio, Texas 78212. The Auction, if held, will be held to determine the highest and best offer from a party interested in purchasing substantially all of the Assets.

**B.      Bids, Alternate Negotiations, and Bid Protections**

3.      The Trustee is authorized, but not required, to accept or utilize a process that allows for additional bids to be topped based on negotiated terms or an auction. Any party wishing to participate in the sales process and potential auction must submit an offer to the Trustee through Global Hunter Securities by electronic mail to Michael Schmidt (mschmidt@ghsecurities.com) and Jenna Wittig (jwittig@ghsecurities.com). Any bidder may request consideration of a break up fee or other expense reimbursement provisions ("Break-Up Fee") as part of their offer. Any Break-Up Fee is subject to Court approval before it is effective.

4.      If the Trustee determines, in exercising his business judgment and after consulting with his professionals, the Committee and the Lenders, that a bid with certain bid protections should be accepted, subject to receipt of a higher and better offer, then the party that submits the accepted stalking horse offer will become the "Stalking Horse Bidder," and its offer, the "Stalking Horse Offer," and the Trustee will promptly file a notice of the accepted Stalking Horse Offer. A Stalking Horse Offer accepted by the Trustee will be considered a Qualified Offer, and the Stalking Horse Bidder a Qualified Bidder.

5.      The Trustee, after consulting with his professionals, the Committee and the Lenders, may determine to enter into negotiations with one potential buyer

("Designated Purchaser"), and proceed to seek Bankruptcy Court approval in either a Stand-Alone Hearing or Plan Confirmation, without proceeding to a formal Auction as set forth in C and D, below.

## C.   Admission to the Auction

6.     If an Auction is pursued, only parties submitting Qualified Offers will be allowed to participate in the Auction (a "Bidding Party"). A Qualified Offer must satisfy all of the following requirements, unless waived by the Trustee after consultation with his professionals, the Committee and the Lenders:

   a.     Must not contain any contingencies for the potential buyer's ability to obtain financing or conduct additional due diligence;

   b.     Must not contain any condition to closing on the receipt of any third party approval (excluding approvals required by the Bankruptcy Court or any governmental or regulatory agency);

   c.     Must not be conditioned upon the approval by the Bankruptcy Court, or receipt by the potential buyer, of any bid protections or break-up fees;

   d.     Must provide that the offer is irrevocable for fourteen (14) days after the entry of an order confirming a plan of reorganization or an order approving a sale pursuant to 11 U.S.C. §§ 363 & 365;

   e.     Must acknowledge that the potential buyer has: (x) had the opportunity to conduct its own due diligence and independent review of the Debtor's assets and financial information; and (y) relied solely upon its own due diligence, and not any oral or written statements of the Trustee, his professionals, or any other third party;

   f.     Must specify all executory contracts or unexpired leases that will be assumed by the Trustee (the "Assumed Contracts") and assigned to the buyer and any cure amounts necessary to assume the same;

   g.     Must contain provisions specifically identifying (a) which, if any, working capital assets the potential buyer intends to acquire and the consideration, if any, intended to be paid for same; (b) which, if any, post-petition liabilities the potential buyer intends to assume; and (c) the consideration proposed for non-working capital assets, such as real property, plant and equipment;

g.     Unless the offeror is a Lender to the Debtor, the offer must be accompanied by: (x) an executed escrow agreement that is acceptable to the Trustee; (y) proof of receipt by an escrow agent of the potential buyer's deposit in an amount of no less than 5% of the total consideration provided in the offer (the "Good Faith Deposit"); and

h.     Must be received by Global Hunter Securities on behalf of the Trustee no later than the Bid Deadline, which is **March 29, 2011**.

7.     If an Auction will be pursued, no later than **5:00 p.m. on March 31, 2011**, the Trustee will give written notice to all parties who have submitted a Qualified Offer (the "Qualified Bidders"): (a) of the Qualified Bidder's admission to the Auction; and (b) the amount of the Initial Highest Bid. The Trustee will determine, in consultation with its professionals, the Committee and the Lenders, the highest and best offer among the Qualified Offers (the "Initial Highest Bid"). All Qualified Offers will be made public after March 31, 2011, unless the Trustee elects otherwise. The Lenders are deemed Qualified Bidders, and their credit bids, if any, Qualified Offers.

**D.     The Auction**

8.     If an Auction is pursued, only representatives of the following parties will be admitted to the Auction: (i) the Trustee; (ii) the Committee; (iii) the Lenders; (iv) the Qualified Bidders; and (v) the United States Trustee (collectively, the "Auction Participants").

9.     During the Auction, which may or may not be held in an open forum, the Trustee will accept bids from the Qualified Bidders (the "Bidding Parties" or, each a "Bidding Party"). The bidding shall start at the Initial Highest Offer, and shall be increased by any Bidding Party in minimum increments of $100,000.00, with the first overbid including an amount equal to the Break-Up Fee, if any, plus the initial overbid amount, if any, (if theretofore approved by the Bankruptcy Court), until no additional

offers are submitted by a Bidding Party. The Trustee, and the Trustee's professionals, may adjourn the Auction from time to time to negotiate and discuss directly with the Bidding Parties and the other Auction Participants.

10.    The Trustee will determine, after any potential auction and after considering the conditions, contingencies and terms submitted by each Bidding Party, and after consulting with his professionals, the Committee and the Lenders, and in the Trustee's sole and exclusive business judgment, which offer presents the highest and best consideration and recovery for the estate, its creditors and stakeholders. Upon reaching such a determination, the Trustee will announce which Bidding Party submitted: (i) the highest and best offer (the "Successful Bidder"); and (ii) the second highest and best offer (the "Back-up Bidder").[1]

11.    The Trustee will ask the Court to approve the Successful Bidder and the Back-up Bidder, and the applicable transaction proposed by each, as part of the confirmation of the Trustee's plan of reorganization or as a stand-alone sale pursuant to 11 U.S.C. §§ 363 & 365, unless otherwise ordered by the Court.

**E.    Data Room and Due Diligence Materials**

12.    The Trustee will continue to provide access to its financial statements and other relevant materials for interested parties to conduct due diligence. To obtain access to the due diligence materials, an interested party must:

    a.    execute a confidentiality agreement in a form acceptable to the Trustee;

---

[1] The Trustee reserves the right to adopt such other rules, or modify the rules, for the Auction as necessary or appropriate to promote the goal of obtaining the highest and best offer for the estate, its creditors and stakeholders.

        b.     produce financial statements or other documents that demonstrate, to the Trustee's satisfaction, that such interested party is financially capable of closing on a Transaction within the time required; and

        c.     disclose the scope and timing of any due diligence to be conducted before the Bid Deadline

    13.     For information concerning access to the due diligence materials, all interested parties must contact Global Hunter Securities:

| | |
|---|---|
| Michael Schmidt | Jenna Wittig |
| mschmidt@ghsecurities.com | jwittig@ghsecurities.com |
| O: (504) 410-8016 | O: (504) 410-8013 |
| C: (504) 432-4483 | C: (504) 256-9193 |

**F.    All Transactions to Close Pursuant to a Plan or Other Order of the Court**

    14.     No later than **April 7, 2011**, the Successful Bidder or Designated Purchaser, and the transaction proposed by the Successful Bidder or Designated Purchaser (the "Transaction") will be disclosed as a supplement to the Trustee's plan of reorganization (the "Plan") or in papers for approval of a stand-alone sale pursuant to 11 U.S.C. §§ 363 & 365 ("Stand-Alone Hearing"). The Trustee will seek the Bankruptcy Court's approval of the proposed Transaction as part of the confirmation of the Plan (the "Confirmation") or a Stand-Alone Hearing. The dates for the Confirmation Hearing or Stand Alone Hearing and the deadline for filing objections shall be provided by a separate order and notice.

    15.     In the case of a conflict between this Notice and the Bid Procedures Order, the Bid Procedures Order controls. A copy of the Bid Procedures Order may be obtained from Global Hunter Securities or the undersigned.

    Dated: March 2, 2011.

               Respectfully submitted,

LANGLEY & BANACK, INC.
745 East Mulberry, Ste. 900
San Antonio, TX  78212-3166
Telephone:  (210)-736-6600
Fax: (210) 735-6889
E-mail: dgragg@langleybanack.com

By: _____

DAVID S. GRAGG
Texas Bar No. 08253300
STEVEN R. BROOK
Texas Bar No. 03042300
NATALIE F. WILSON
Hawaii Bar No. 8852
Admitted *Pro Hac Vice*

ATTORNEYS FOR ERIC J. MOELLER,
CHAPTER 11 TRUSTEE