# EXHIBITS A - F

## TO ASSET PURCHASE AGREEMENT

## SPECIAL WARRANTY DEED

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF BEXAR | § | |

That, effective as of the Effective Time, **AGE REFINING, INC.**, a Delaware corporation (the "Grantor"), whose address is 7811 S. Presa Street, San Antonio, Texas 78223, for and in consideration of the sum of Ten and No/100 Dollars ($10.00) paid to Grantor and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, has, subject to the exceptions and other matters hereinafter set forth, GRANTED, SOLD, and CONVEYED and by these presents does hereby GRANT, SELL, and CONVEY unto **NUSTAR REFINING, LLC**, a Delaware limited liability company (the "Grantee"), whose address is 2330 Loop 1604 W. San Antonio, Texas 78248, certain properties located in the City of San Antonio, County of Bexar, State of Texas, and being more particularly described in Exhibit A attached hereto and incorporated herein by reference for all purposes, together with all buildings, improvements, fixtures and appurtenances located thereon, if any, (collectively, the "Property");

SUJECT HOWEVER, to each of the matters set forth in Exhibit B attached hereto and incorporated by reference (the "Permitted Encumbrances");

TO HAVE AND TO HOLD the Property, subject to the Permitted Encumbrances, together with all and singular the rights and appurtenances pertaining thereto, including all of Grantor's right, title and interest in and to adjoining streets, alleys and rights-of-way, unto Grantee, and Grantee's successors and assigns, forever; and Grantor does hereby bind itself, and its successors and assigns, to warrant and forever defend all and singular the title to the Property, subject to the Permitted Encumbrances, unto Grantee, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, by, through or under Grantor but not otherwise.

This conveyance is made by Grantor and accepted by Grantee subject to the provisions of that certain Asset Purchase Agreement dated as of April __, 2011, between Grantor and Grantee (the "Purchase Agreement"). Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Purchase Agreement.

**NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, THE DELIVERY OF THIS SPECIAL WARRANTY DEED SHALL NOT DIMINISH OR OTHERWISE IMPAIR ANY OF THE REPRESENTATIONS, WARRANTIES, COVENANTS, CONDITIONS, INDEMNITIES, TERMS, OR PROVISIONS OF THE PURCHASE AGREEMENT, AND ALL OF THE REPRESENTATIONS, WARRANTIES, COVENANTS, CONDITIONS, INDEMNITIES, TERMS, AND PROVISIONS CONTAINED IN THE PURCHASE AGREEMENT SHALL SURVIVE THE DELIVERY OF THIS SPECIAL WARRANTY DEED TO THE EXTENT, AND IN THE MANNER, SET FORTH IN THE PURCHASE AGREEMENT.**

IN WITNESS WHEREOF, this Special Warranty Deed is executed to be effective for all purposes as of the 21st day of April, 2011 for all purposes as provided above.

**AGE REFINING, INC.**

By: _____

Name: _____

Title: _____

STATE OF TEXAS         )
                               ) SS

COUNTY OF BEXAR     )

This instrument was acknowledged before me on April ___, 2011, by _____, the _____ of AGE REFINING, INC., a Delaware corporation, on behalf of said corporation.

Notary Public, State of : _____

My commission expires: _____

**NUSTAR REFINING, LLC**

By: _____
               Michael H. Hoeltzel
               Senior Vice President

STATE OF TEXAS         )
                               ) SS

COUNTY OF BEXAR     )

This instrument was acknowledged before me on April ___, 2011, by Michael H. Hoeltzel, the Senior Vice President of NUSTAR REFINING, LLC, a Delaware limited liability company, on behalf of said limited liability company.

Notary Public, State of Texas

My commission expires: _____

## ATTACHMENTS

Exhibit A – Property Legal Description
Exhibit B – Permitted Encumbrances Exceptions

# EXHIBIT A

## PROPERTY LEGAL DESCRIPTION

# EXHIBIT B

# PERMITTED ENCUMBRANCES EXCEPTIONS

## BILL OF SALE

This BILL OF SALE ("Bill of Sale") is being executed and delivered this 21st day of April, 2011 by **AGE REFINING, INC.**, a Delaware corporation ("Seller"), to **NUSTAR REFINING, LLC**, a Delaware limited liability company ("Purchaser"), pursuant to that certain Asset Purchase Agreement by and between Seller and Purchaser dated as of April __, 2011 (the "Purchase Agreement"), reference to which is hereby made for all purposes. Capitalized terms used but not defined herein shall have the meanings set forth in the Purchase Agreement.

In return for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Seller hereby sells, conveys, assigns, transfers and delivers to Purchaser, and Purchaser hereby purchases and acquires, al of Seller's right, title and interest in and to all of the Purchased Assets, other than any of the same constituting Inventory.

The Purchased Assets are hereby sold by Seller and accepted by Purchaser subject to and in accordance with, all of the terms and conditions of the Purchase Agreement. In the event of any irreconcilable conflict between the terms and provisions of this Bill of Sale and the terms and provisions of the Purchase Agreement, the terms and provisions of the Purchase Agreement shall control. Seller hereby represents, warrants, covenants and agrees that it will warrant and defend the sale of the Purchased Assets covered hereunder against each and every person or entity whomsoever claiming or asserting any claim against any or all of the same.

EXCEPT FOR THE TITLE WARRANTY SET FORTH ABOVE, AND THE REPRESENTATIONS AND WARRANTIES SET FORTH IN THE PURCHASE AGREEMENT, THE SAID PURCHASED ASSETS ARE CONVEYED IN THEIR **"AS IS, WHERE IS CONDITION WITH ALL FAULTS,"** WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, INCLUDING WITHOUT LIMITATION, ANY REPRESENTATION OR WARRANTY AS TO TITLE, CONDITION, MERCHANTABILITY, PERFORMANCE, FITNESS (BOTH GENERALLY AND FOR ANY PARTICULAR PURPOSE), COMPLIANCE WITH LAWS OR OTHERWISE, ALL OF WHICH REPRESENTATIONS AND WARRANTIES SELLER HEREBY EXPRESSLY DISCLAIMS. PURCHASER, BY ITS ACCEPTANCE OF THIS BILL OF SALE, ACCEPTS THE SAID PURCHASED ASSETS ON SUCH TERMS AND ACCEPTS AND ACKNOWLEDGES THE FOREGOING DISCLAIMER BY SELLER. NOTWITHSTANDING ANYTHING HEREIN, THE DELIVERY OF THIS BILL OF SALE SHALL NOT DIMINISH OR OTHERWISE IMPAIR ANY OF THE REPRESENTATIONS, WARRANTIES, COVENANTS, CONDITIONS, INDEMNITIES, TERMS OR PROVISIONS OF THE PURCHASE AGREEMENT, AND ALL OF THE REPRESENTATIONS, WARRANTIES, COVENANTS, CONDITIONS, INDEMNITIES, TERMS AND PROVISIONS CONTAINED IN THE PURCHASE AGREEMENT SHALL SURVIVE

THE DELIVERY OF THIS BILL OF SALE TO THE EXTENT, AND IN THE MANNER, SET FORTH IN THE PURCHASE AGREEMENT.

Seller covenants that it will from time to time at its expense make, execute and deliver, or cause to be made, executed and delivered, such instruments, acts, consents and assurances as Purchaser may reasonably request to effectively sell, convey, transfer to and vest in Purchaser all of the aforesaid Purchased Assets being sold, conveyed, assigned, transferred and delivered hereunder and to put Purchaser in possession of any such Purchased Assets being sold, conveyed, assigned, transferred and delivered hereunder.

This Bill of Sale shall be binding upon, and inure to the benefit of, the parties and their respective successors and assigns.

IN WITNESS WHEREOF, this BILL OF SALE has been duly executed and delivered as of the date first written above, but shall be effective for all purposes as of the Effective Time.

**AGE REFINING, INC.**

By: _____

Name: _____

Title: _____


**NUSTAR REFINING, LLC**

By: _____

Michael H. Hoeltzel
Senior Vice President

## BILL OF SALE
### (Inventory)

This BILL OF SALE ("Bill of Sale") is being executed and delivered this 21st day of April, 2011 by **AGE REFINING, INC.**, a Delaware corporation ("Seller"), to **NUSTAR MARKETING, LLC**, a Delaware limited liability company ("Purchaser"), pursuant to that certain Asset Purchase Agreement by and between Seller and Purchaser dated as of April __, 2011 (the "Purchase Agreement"), reference to which is hereby made for all purposes. Capitalized terms used but not defined herein shall have the meanings set forth in the Purchase Agreement.

In return for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Seller hereby sells, conveys, assigns, transfers and delivers to Purchaser, and Purchaser hereby purchases and acquires, al of Seller's right, title and interest in and to that portion of the Purchased Assets constituting the Inventory.

The Purchased Assets covered hereunder are hereby sold by Seller and accepted by Purchaser subject to and in accordance with, all of the terms and conditions of the Purchase Agreement. In the event of any irreconcilable conflict between the terms and provisions of this Bill of Sale and the terms and provisions of the Purchase Agreement, the terms and provisions of the Purchase Agreement shall control. Seller hereby represents, warrants, covenants and agrees that it will warrant and defend the sale of the Purchased Assets covered hereunder against each and every person or entity whomsoever claiming or asserting any claim against any or all of the same.

EXCEPT FOR THE TITLE WARRANTY SET FORTH ABOVE, AND THE REPRESENTATIONS AND WARRANTIES SET FORTH IN THE PURCHASE AGREEMENT, THE SAID PURCHASED ASSETS ARE CONVEYED IN THEIR **"AS IS, WHERE IS CONDITION WITH ALL FAULTS,"** WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, INCLUDING WITHOUT LIMITATION, ANY REPRESENTATION OR WARRANTY AS TO TITLE, CONDITION, MERCHANTABILITY, PERFORMANCE, FITNESS (BOTH GENERALLY AND FOR ANY PARTICULAR PURPOSE), COMPLIANCE WITH LAWS OR OTHERWISE, ALL OF WHICH REPRESENTATIONS AND WARRANTIES SELLER HEREBY EXPRESSLY DISCLAIMS. PURCHASER, BY ITS ACCEPTANCE OF THIS BILL OF SALE, ACCEPTS THE SAID PURCHASED ASSETS ON SUCH TERMS AND ACCEPTS AND ACKNOWLEDGES THE FOREGOING DISCLAIMER BY SELLER. NOTWITHSTANDING ANYTHING HEREIN, THE DELIVERY OF THIS BILL OF SALE SHALL NOT DIMINISH OR OTHERWISE IMPAIR ANY OF THE REPRESENTATIONS, WARRANTIES, COVENANTS, CONDITIONS, INDEMNITIES, TERMS OR PROVISIONS OF THE PURCHASE AGREEMENT, AND ALL OF THE REPRESENTATIONS, WARRANTIES, COVENANTS, CONDITIONS, INDEMNITIES, TERMS AND PROVISIONS CONTAINED IN THE PURCHASE AGREEMENT SHALL SURVIVE

THE DELIVERY OF THIS BILL OF SALE TO THE EXTENT, AND IN THE MANNER, SET FORTH IN THE PURCHASE AGREEMENT.

Seller covenants that it will from time to time at its expense make, execute and deliver, or cause to be made, executed and delivered, such instruments, acts, consents and assurances as Purchaser may reasonably request to effectively sell, convey, transfer to and vest in Purchaser all of the aforesaid Purchased Assets being sold, conveyed, assigned, transferred and delivered hereunder and to put Purchaser in possession of any such Purchased Assets being sold, conveyed, assigned, transferred and delivered hereunder.

This Bill of Sale shall be binding upon, and inure to the benefit of, the parties and their respective successors and assigns.

IN WITNESS WHEREOF, this BILL OF SALE has been duly executed and delivered as of the date first written above, but shall be effective for all purposes as of the Effective Time.

**AGE REFINING, INC.**

By: _____
Name: _____
Title: _____

**NUSTAR MARKETING, LLC**

By: _____
       Michael H. Hoeltzel
       Senior Vice President

**EXHIBIT C**

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Agreement") is entered into as of April 21, 2011, by and between **AGE REFINING, INC.**, a Delaware corporation ("Assignor"), and **NUSTAR REFINING, LLC**, a Delaware limited liability company ("Assignee").

## RECITALS

A.     Assignor and Assignee entered into an Asset Purchase Agreement dated as of April __, 2011 (the "Purchase Agreement"), reference to which is hereby made for all purposes. Capitalized terms used but not defined herein shall have the meanings set forth in the Purchase Agreement. This Agreement is made subject to the terms and conditions contained in the Purchase Agreement.

B.     Pursuant to the Purchase Agreement, Assignor has agreed to sell, convey, assign, transfer and deliver to Assignee, and Assignee has agreed to purchase and acquire from Assignor, the Purchased Assets.

C.     Pursuant to the Purchase Agreement, Assignee has agreed to assume, pay, perform and discharge the Assumed Liabilities.

D.     Assignor desires to transfer and assign, and Assignee desires to accept such transfer and assignment of, the Purchased Assets and Assumed Liabilities.

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.     Effective as of the Effective Time, Assignor hereby assigns, conveys and transfers unto Assignee, all right, title and interest in the Purchased Assets and Assignee hereby assumes and agrees to pay, perform, observe and discharge, fully and timely, all of Assignor's guarantees, undertakings, promises, rights, covenants and obligations under the Assumed Liabilities.

2.     Assignor is not selling, transferring, conveying or assigning to Assignee, and Assignee is not assuming, the Excluded Assets or the Excluded Liabilities. The Excluded Liabilities shall be retained by and remain Liabilities of Assignor.

3.     Nothing in this Agreement, express or implied, is intended or shall be construed to confer upon, or give to, any person, firm or corporation other than the parties hereto and their respective successors or assigns, any remedy or claim under or by reason of this Agreement or any terms, covenants or conditions hereof, and all the terms, covenants and conditions, promises and agreements contained in this Agreement shall be for the sole and exclusive benefit of the parties hereto and their respective successors and assigns.

4.      This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns. In the event of any irreconcilable conflict between this Agreement and the Purchase Agreement, the terms and provisions of the Purchase Agreement shall control.

*[Balance of page intentionally left blank]*

IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement to be executed as of the date first written above by its officer thereunto duly authorized.

**AGE REFINING, INC.**

By: _____

Name: _____

Title: _____

**NUSTAR REFINING, LLC**

By: _____
       Michael H. Hoeltzel
       Senior Vice President

## AFFIDAVIT OF NON-FOREIGN STATUS
[Pursuant to 26 U.S.C. §1445 and 26 C.F.R. §1.1445-2(b)(2)(iv)(B)]

Section 1445 of the Internal Revenue Code provides that a transferee of a U.S. real property interest must withhold tax if the transferor is a foreign person. For U.S. tax purposes (including §1445), the owner of a disregarded entity (which has legal title to a U.S. real property interest under local law) will be the transferor of the property and not the disregarded entity. To inform the transferee that withholding of tax is not required upon the disposition of the Assets (as such term is defined in the Sale and Purchase Agreement between **AGE REFINING, INC.** (*"Transferor"*) and **NUSTAR REFINING, LLC** (*"Transferee"*), the undersigned hereby certifies the following on behalf of Transferor:

1.   Transferor is not a foreign corporation, foreign partnership, foreign trust, or foreign estate (as those terms are defined in the Internal Revenue Code and Income Tax Regulations) nor a nonresident alien for U.S. income tax purposes;

2.   Transferor is not a disregarded entity as defined in § 1.1445–2(b)(2)(iii);

3.   Transferor's U.S. employer identification number is [＿＿＿＿]; and

4.   Transferor's office address is: 7811 S. Presa Street, San Antonio, Texas 78223.

Transferor understands that this certification may be disclosed to the Internal Revenue Service by Transferee and that any false statement contained herein could be punished by fine, imprisonment, or both.

Under penalties of perjury I declare that I have examined this certification and to the best of my knowledge and belief it is true, correct, and complete, and I further declare that I have authority to sign this document on behalf of Transferor.

### TRANSFEROR:

**AGE REFINING, INC.**

By: ＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
Name: ＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
Title: ＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
Date: ＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

STATE OF TEXAS     )
                       )      ss
COUNTY OF BEXAR   )

     I HEREBY CERTIFY that on this day before me, an officer duly authorized in the State of Texas and County of Bexar to take acknowledgements, personally appeared _____ on behalf of AGE REFINING, INC. to me known to be the person described in and who executed the foregoing instrument and he or she acknowledged the execution thereof to be his or her free act and deed, for the uses and persons therein mentioned.

     WITNESS my hand and notarial seal, at the State and County aforesaid, this _____ day of April, 2011.


     _____
     Notary Public

     My commission expires on _____

# DEPOSIT ESCROW AGREEMENT
## (AGE Refining, Inc.)

THIS DEPOSIT ESCROW AGREEMENT (this "Agreement"), dated as of April 1, 2011, is entered into by NuStar Energy L.P. ("NuStar") and by Langley & Banack, Inc. in its capacity as Escrow Agent ("Escrow Agent"), and by Eric J. Moeller solely in his capacity as the Chapter 11 Trustee of AGE Refining, Inc. the debtor in the Bankruptcy Case ("Trustee").

## RECITALS

WHEREAS, AGE Refining, Inc. ("AGE" or "Debtor") filed for protection under Chapter 11 of the Bankruptcy Code under Case No. 10-50501 (the "Bankruptcy Case"), United States Bankruptcy Court for the Western District of Texas, San Antonio Division ("Bankruptcy Court");

WHEREAS, by order of the Bankruptcy Court dated July 6, 2010, Eric J. Moeller was appointed as the Trustee in the Bankruptcy Case;

WHEREAS, by amended order of the Bankruptcy Court dated March 15, 2011, certain bid procedures for an auction or other sale of certain assets of AGE was entered ("Bid Procedures Order");

WHEREAS, NuStar and the Trustee have reached an agreement in principle regarding NuStar becoming the Designated Purchaser (as such term is defined in the Bid Procedures Order) for certain of the Debtor's assets, as set forth in the Indicative Offer ("IO") dated as of the date hereof

WHEREAS, the IO contemplates: (i) an initial escrow of $1,000,000 (the "Initial Escrow") and a subsequent escrow of $2,000,000 (the "Subsequent Escrow") at the closing of the transaction contemplated by the IO ("Closing") for a total escrow of $3,000,000 (the "Total Escrow");

WHEREAS, the Trustee has designated Escrow Agent to act as the escrow agent;

WHEREAS, the Escrow Agent shall hold and release the Total Escrow in accordance this Agreement;

NOW, THEREFORE, in consideration of the mutual covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.    **Recitals**.  The recitals set forth above are true and correct and are incorporated into this Agreement by this reference to the same extent as if fully set forth in the body hereof.

2.    **Appointment of Escrow Agent**.  The Escrow Agent is hereby appointed as escrow agent hereunder and agrees to act on the terms and subject to the conditions hereinafter set forth. The parties to this Agreement understand the Escrow Agent is general counsel to the Trustee in the Bankruptcy Case and waive any conflict of interest.

3. **Delivery of Total Escrow.** At the signing of the IO, NuStar shall deliver to the Escrow Agent the Initial Escrow. At the Closing, NuStar shall deliver the Subsequent Escrow. The Total Escrow shall be applied to the purchase price at Closing and shall further serve as a "holdback" solely for purposes of remitting payment to NuStar for any working capital "true up" after Closing.

4. **Release of Total Escrow.**

(a) **Holding Period.** If the Bankruptcy Court does not enter an order approving the motion to approve the sale of the assets identified in the IO to NuStar by April 12, 2011 or the Closing does not occur on April 21, 2011 (other than through the sole fault of NuStar, as declared by order of the Bankruptcy Court), then the Escrow Agent shall return the Initial Escrow within three (3) business days. In addition, the Total Escrow shall be released to the Debtor or NuStar (as applicable) as soon as is reasonably practicable after the Closing, pending completion of the "true up" procedures;

(b) **Instructions of the Trustee.** The Escrow Agent shall not, and shall not be required to, release or return the Total Escrow, except (i) upon the written instructions of the Trustee; (ii) on order of the Court; or (iii) upon expiration of the time periods described under 4(a).

5. **Investment of Total Escrow.** During the term of this Agreement, the Escrow Agent shall maintain the Total Escrow in Escrow Agent's IOLTA account at Compass Bank. The Escrow Agent shall have no liability for any loss sustained as a result of any investment made pursuant to this Agreement. The interest accrued in the IOLTA account will be applied in accordance with State Bar of Texas rules. At the direction of the Trustee, the United States Trustee, or the Bankruptcy Court, the Escrow Agent is authorized to establish an account at Compass Bank (separate from the Escrow Agent's IOLTA account), or at another federally insured bank, to hold the Total Escrow.

6. **Statements.** During the term of this Agreement, the Escrow Agent may provide, and shall at the request of the Bankruptcy Court, Trustee or a party, provide the parties with statements containing the beginning balance in the Total Escrow as well as all disbursements. The Escrow Agent shall be responsible for reconciling such statements. The Escrow Agent shall be forever released and discharged from all liability with respect to the accuracy of such statements and the transactions listed therein, except with respect to any such act or transaction as to which a party shall, within 90 days after making the statement available, file written objections with the Escrow Agent.

7. **Rights and Responsibilities of Escrow Agent.** The acceptance by the Escrow Agent of its duties hereunder is subject to the following terms and conditions, which the parties to this Agreement hereby agree shall govern and control with respect to the Escrow Agent's rights, duties, liabilities and immunities:

(a)     The Escrow Agent may rely and shall be protected in acting or refraining from acting upon (and shall incur no liability for following the instructions contained therein) any written notice, instruction or request furnished to it hereunder and believed by it to be genuine and to have been signed or presented by the proper party or parties. The Escrow Agent shall be under no duty to inquire into or investigate the validity, accuracy or content of any such document. The Escrow Agent shall have no duty to solicit any payments which may be due to be paid into the Escrow by any party.

(b)     The Escrow Agent shall not be liable for any action taken or omitted by it unless a court of competent jurisdiction determines that the Escrow Agent's gross negligence or willful misconduct was the primary cause of any loss. In the administration of the Total Escrow hereunder, the Escrow Agent may execute any of its powers and perform its duties hereunder directly or through agents or attorneys and may consult with counsel, including in-house counsel, accountants and other skilled persons to be selected and retained by it. The Escrow Agent shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel, accountants or other skilled persons, including in-house counsel.

(c)     The Escrow Agent's duties hereunder are purely ministerial in nature and it shall have no duties except those specifically set forth in this Agreement and shall not be subject to, nor have any liability or responsibility under, any other agreement or document the other parties hereto may be parties to or responsible for, even if same is referenced herein or copies have been given to the Escrow Agent.

(d)     The Escrow Agent shall have the right at any time it deems appropriate to seek adjudication in a court of competent jurisdiction as to the respective rights of the parties hereto and shall not be held liable by any party hereto for any delay or the consequences of any delay occasioned by such resort to court, including, without limitation, in the event that Escrow Agent shall be in doubt as to its rights, duties or liabilities under the provisions of this Agreement, Escrow Agent may, in it sole discretion, and upon notifying the other parties, deposit the Total Escrow with the clerk of such court of competent jurisdiction. Courts of competent jurisdiction are determined under the provisions below. In the event of any suit between or among the parties wherein Escrow Agent is made a party by virtue of acting as Escrow Agent hereunder, or in the event of any suit wherein Escrow Agent interpleads the Good Faith Deposits, Escrow Agent shall be entitled to recover all of its reasonable attorneys' fees and costs incurred, from such funds, provided that Escrow Agent has not breached this Agreement or acted negligently.

8.     **Notices**. All notices, requests, claims, demands, and other communications hereunder shall be in writing and shall be given or made by delivery in person, by e-mail (confirmed by another means of delivery) or by overnight courier service (such as UPS or FedEx) to the parties at the following addresses (or at such other address for a party as shall be specified by like notice):

(a)     If to NuStar:

NuStar Energy L.P.
2330 North Loop 1604 West
San Antonio, TX 78248
Attn: Bradley C. Barron
Brad.Barron@nustarenergy.com

(b)     If to Trustee:

AGE Refining, Inc.
7811 S. Presa
San Antonio, TX 78223
Attn: Eric J. Moeller, Trustee
ericjmoeller@gmail.com

(c)     If to Escrow Agent:

Langley & Banack, Inc.
745 E. Mulberry, Ninth Floor
San Antonio, Texas 78212
Attention: Steve Brook
sbrook@langleybanack.com

Notices delivered in person, by e-mail (confirmed by another means of delivery) or by overnight courier service (such as UPS or FedEx) shall be deemed given as of actual receipt (e-mail confirmation must be given, but so long as properly given, the e-mail is effective on receipt of the e-mail). All notices delivered to Escrow Agent shall also be delivered to the other parties. Any party may change its address for notice purposes by giving notice to the other parties in the manner described herein. As used herein, "Business Day" means any day other than a Saturday, Sunday, or any legal holiday in the City of San Antonio, Texas.

9.     **Resignation; Removal.**

(a)     The Escrow Agent may resign at any time by giving ten (10) days written notice of such resignation to the parties. If no successor Escrow Agent has been named by the Trustee or Bankruptcy Court at the expiration of the ten (10) day period, the Escrow Agent shall have no further obligation hereunder except to hold the Total Escrow as a depository. Upon notification by the Trustee or Bankruptcy Court of the appointment of a successor, the Escrow Agent shall, upon payment of any and all fees and expenses due to Escrow Agent, promptly deliver the Total Escrow and all materials in its possession relating to the Total Escrow to such successor, and the duties of the resigning Escrow Agent shall thereupon in all respects terminate, and Escrow Agent shall be released and discharged from all further obligations hereunder.

(b)     The Escrow Agent may be discharged from its duties as Escrow Agent under this Agreement upon ten (10) days written notice from the Trustee or the Bankruptcy

Court. In such event, the Escrow Agent shall be entitled to rely on written notice from the Trustee or the Bankruptcy Court as to the disposition and delivery of the Total Escrow.

10. **Miscellaneous**.

(a) **Termination**. Upon the distribution of the Total Escrow, this Agreement shall terminate and Escrow Agent shall have no further obligations hereunder. Once the Total Escrow has been released from Escrow in compliance with this Agreement, Escrow Agent shall be relieved of any further responsibility or liability herein (other than obligations arising in connection with Escrow Agent's gross negligence or willful misconduct).

(b) **Counterparts**. This Agreement may be executed in any number of identical counterparts, and each counterpart hereof shall be deemed to be an original instrument, but all counterparts hereof taken together shall constitute but a single instrument. Delivery of an executed signature page to this Agreement by e-mail transmission shall be as effective as delivery of a manually signed counterpart of this Agreement (or Joinder).

(c) **Binding Effect**. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns.

(b) **No Waiver**. The rights and remedies of the parties to this Agreement are cumulative and not alternative. Except as otherwise provided herein, neither the failure nor any delay by any party in exercising any right, power, or privilege under this Agreement or the documents referred to in this Agreement will operate as a waiver of such right, power or privilege, and no single or partial exercise of any such right, power or privilege will preclude any other or further exercise of such right, power, or privilege or the exercise of any other right, power, or privilege. To the maximum extent permitted by applicable law and except as otherwise provided herein, (i) no claim or right arising out of this Agreement or the documents referred to in this Agreement can be discharged by one party, in whole or in part, by a waiver or renunciation of the claim or right unless in writing signed by the other party; (ii) no waiver that may be given by a party will be applicable except in the specific instance for which it is given; and (iii) no notice to or demand on one party will be deemed to be a waiver of any obligation of such party or of the right of the party giving such notice or demand to take further action without notice or demand as provided in this Agreement or the documents referred to in this Agreement.

(c) **Severability**. If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement will remain in full force and effect. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

(d) **Governing Law; Venue; Service of Process**. The laws of the State of Texas (without regard to its choice of law principles that might apply the law of another jurisdiction) shall govern the validity of this Agreement, the construction of its terms, and the interpretation and enforcement of the rights and duties of the parties. If any action is brought in connection with this Agreement, the courts of competent jurisdiction and the exclusive venue for

such action shall be any federal or state court located in Bexar County, Texas; provided however, until the Bankruptcy Case (including any subsequent Chapter 7 case) is closed, the United States Bankruptcy Court for the Western District of Texas, San Antonio Division has the exclusive jurisdiction of any dispute hereunder, and shall be the exclusive court of competent jurisdiction hereunder. Each of the parties hereto expressly submits to jurisdiction of such courts, as applicable, and waives any claim of improper jurisdiction or lack of venue in connection with any such matter. Each party hereby agrees that such courts, as applicable, shall have *in personam* jurisdiction with respect to such party, and such party hereby submits to the personal jurisdiction of such courts. Process in any action or proceeding referred to in the preceding sentence may be served on any party anywhere in the world.

(e)     **Entire Agreement**. This Agreement contains the entire agreement of the parties hereto and supersedes any and all prior agreements and negotiations between said parties regarding the subject matter contained herein.


IN WITNESS WHEREOF, this Escrow Agreement has been executed by the parties effective as of the date indicated above.

**TRUSTEE**:

ERIC J. Moeller, SOLELY IN HIS CAPACITY AS
CHAPTER 11 TRUSTEE OF
AGE REFINING, Inc.


By:_____
Name:  Eric J. Moeller
Title:  Trustee


**ESCROW AGENT:**

LANGLEY & BANACK, INC.

By:_____
Name:_____
Title:_____


**NUSTAR ENERGY L.P.**
**By: Riverwalk Logistics, L.P., its general partner**
**By: NuStar GP, LLC, its general partner**


By:_____
Name: Michael H. Hoeltzel
Title:    Senior Vice President – Corporate Development

## AMENDMENT NO. 1 TO DEPOSIT ESCROW AGREEMENT
### (AGE Refining, Inc.)

This Amendment No. 1 dated as of April 11, 2011 (the "**Amendment**") is being entered into by and among NuStar Energy L.P. ("**NuStar**"), Langley & Banack, Inc., in its capacity as Escrow Agent ("**Escrow Agent**") and Eric J. Moeller solely in his capacity as the Chapter 11 Trustee of AGE Refining, Inc. ("**Trustee**," and collectively with NuStar and Escrow Agent, the "**Parties**").

**WHEREAS**, the Parties entered into that certain Deposit Escrow Agreement, dated as of April 1, 2011 (the "**Agreement**"); and

**WHEREAS**, the Parties desire to amend the Agreement as hereinafter set forth.

**NOW THEREFORE**, in consideration of the premises and the mutual covenants and agreements contained herein, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree to amend the Agreement as follows:

1.      The first sentence of Section 4(a) of the Agreement shall be deleted in its entirety and replaced with the following text:

> "**Holding Period.** If the Bankruptcy Court does not enter an order approving the motion to approve the sale of the assets indentified in the IO to NuStar by April 15, 2011 or the Closing does not occur on April 21, 2011 (other than through the sole fault of NuStar, as declared by order of the Bankruptcy Court), then the Escrow Agent shall return the Initial Escrow within three (3) business days."

2.      All capitalized terms contained in this Amendment shall have the same definitions as are set forth in the Agreement unless otherwise defined herein.

3.      Except as modified by this Amendment, the Agreement remains in full force and effect.

4.      This Amendment may be signed in multiple counterparts.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Amendment to be duly executed by their respective officers thereunto duly authorized as of the date first above written.

<u>**TRUSTEE**</u>:

ERIC J. Moeller, SOLELY IN HIS CAPACITY AS CHAPTER 11 TRUSTEE OF AGE REFINING, Inc.

By:_____
Name:  Eric J. Moeller
Title:  Trustee

<u>**ESCROW AGENT**</u>:

LANGLEY & BANACK, INC.

By:_____
Name:_____
Title:_____

<u>**NUSTAR ENERGY L.P.**</u>:

**By: Riverwalk Logistics, L.P., its general partner**
**By: NuStar GP, LLC, its general partner**

By:_____
Name: Michael H. Hoeltzel
Title:  Senior   Vice   President   –   Corporate Development

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| | § | CASE NO. 10-50501-LMC |
| AGE REFINING, INC., | § | |
| | § | Chapter 11 |
| DEBTOR. | § | |
| | § | |

**ORDER (A) AUTHORIZING AND APPROVING THE SALE OF CERTAIN OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES OUTSIDE THE ORDINARY COURSE OF BUSINESS; AND (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Upon the Motion of Eric J. Moeller, the Court-appointed chapter 11 trustee for AGE Refining, Inc. (the "Trustee"), for Entry of Order Authorizing and Approving the Sale of Certain of the Debtor's Assets (the "Purchased Assets") Free and Clear of all Liens, Claims, and Encumbrances Outside the Ordinary Course of Business and to Assume and Assign Certain Executory Contracts and Unexpired Leases (the "Sale Motion"); and upon the Supplement to the Sale Motion filed by Trustee, which included an executed copy of the that certain Asset Purchase Agreement dated as of April 11, 2011 by and between NuStar Refining, LLC (the

"Purchaser") and the Trustee ("APA"), such APA being attached hereto as Exhibit A,[1] and incorporated herein and the Court having found that the relief requested in the Sale Motion is in the best interest of the Debtor's estate, its creditors and other parties in interest; and the Trustee having provided appropriate and sufficient notice under the circumstances, and that no other or further notice is required; and the Court having reviewed the Sale Motion and having heard the evidence in support of the relief requested therein at a hearing before the Court (the "Sale Hearing"); and the Court having considered any objections to the Sale Motion, each of which are overruled, resolved, or withdrawn; and the Court having determined that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore:

**THE COURT HEREBY FINDS THAT:**

A. **Jurisdiction and Venue**. This Court has jurisdiction over this bankruptcy case and the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (M). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a). Findings of fact shall be construed as, and constitute, conclusions of law and conclusions of law shall be construed as, and constitute, findings of fact when appropriate. See Fed. R. Bankr. P. 7052. Statements made by the Court from the bench at the hearing shall constitute additional conclusions of law and findings of fact as appropriate.

B. **Statutory Predicates**. The statutory predicates for the relief sought in the Sale Motion are sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules

---

[1] Capitalized terms not defined in this Order shall have the meaning ascribed to them in the Sale Motion. The schedules and exhibits to the APA are not attached, but copies may be obtained from the Trustee's counsel, and such exhibits and schedules are subject to modification as agreed between Trustee and the Purchaser.

2002, 6004, 6006, 9007 and 9014, and the applicable Local Rules for the United States Bankruptcy Court for the Western District of Texas (the "Local Rules").

C.   **Final Order**.   This order approving the Sale Motion (the "Order") constitutes a final order within the meaning of 28 U.S.C. § 158(a).   Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rules 9014, Rule 54(b) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7054, and any other applicable rule or law, the Court expressly finds that there is no just reason for the delay in the implementation of this Order, waives any stay, and expressly directs entry of the order as set forth herein.

D.   **Notice**.   As evidenced by the affidavits of service filed with this Court and based upon the representations of counsel at the Sale Hearing and as approved under the Bid Procedures Order (Docket No. 758, as amended by Docket No. 870): (i) due, proper, timely, adequate and sufficient notice of the Sale Motion, proposed auction, the Sale, and the transactions contemplated by the APA (the "Sale") has been provided; (ii) it appearing that no other or further notice need be provided; (iii) such notice was and is good, sufficient and appropriate under the circumstances of this bankruptcy case; and (iv) no other or further notice of the Sale Motion, the Auction, the Sale Hearing or the Sale is or shall be required. The disclosures made by the Trustee concerning the Sale Motion, Auction, the Sale, the Sale Hearing, and the APA were reasonable, adequate and complete.

E.   **Opportunity to Object**.   A reasonable opportunity to object and to be heard with respect to the proposed Sale, the Sale Motion and the relief requested therein (including the assumption and assignment of the Assumed Contracts) has been given to all interested persons and entities, including, without limitation, the following: (i) all potential purchasers previously identified by Trustee and any additional parties who have expressed an interest in potentially acquiring the Purchased Assets, including those parties that have

3

submitted formal expressions of interest; (ii) all other potentially interested parties identified by the Trustee in his business judgment as a potential purchaser of assets; (iii) the Office of the United States Trustee; (iv) all applicable federal, state and local regulatory or taxing authorities, recording offices or any governmental entity which have a reasonably known interest in the relief requested in the Sale Motion; and (vii) all parties on the most current master service list.

F. **Sale Process**. The sale process described in the Sale Motion afforded a full, fair and reasonable opportunity for any interested party to submit bids to become: (i) a Stalking Horse Bidder; (ii) a Qualified Bidder in the event of an auction or (iii) a designated purchaser in an effort to preempt an auction. The Trustee spent a significant amount of time negotiating with multiple interested parties and pursuing numerous different asset purchase structures and alternatives. Ultimately, the Trustee determined that in his business judgment, the Purchaser's bid, as fully described in the APA, constitutes the highest and best offer for the Purchased Assets and will provide a greater recovery for the Debtor's estate than would be provided by any other known available alternative. The Trustee's determination that the APA constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Trustee's business judgment.

G. **Arm's-Length Sale**. The APA was negotiated, proposed and entered into by the Trustee and the Purchaser without collusion, in good faith and from arm's-length bargaining positions. Neither the Trustee nor the Purchaser, nor any of their respective representatives, have engaged in any conduct that would cause or permit the APA to be avoided under section 363(n) of the Bankruptcy Code. Specifically, neither Purchaser nor any of its representatives have acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders. The terms and conditions of the APA and the transactions contemplated thereby (including without limitation the

4

consideration provided in respect thereof) are fair and reasonable and shall not be avoided under section 363(n) of the Bankruptcy Code.

H.  **Good Faith Purchaser**.  The Purchaser is purchasing the Purchased Assets and is assuming certain liabilities, as further described in the APA, in good faith and is a good faith purchaser of the Purchased Assets within the meaning of section 363(m) of the Bankruptcy Code and is therefore entitled to all of the protections afforded by that provision. The Purchaser and its representatives have proceeded in good faith and without collusion in all respects in connection with the Sale and Sale Hearing. The Purchaser recognized that the Trustee was free to deal with any interested party in selling the Purchased Assets or pursue alternatives to the Sale, complied with the Bid Procedures Order, and disclosed all payments to be made by the Purchaser in connection with the Sale.

I.  **Authority**. The Trustee: (i) has full power and authority to execute and deliver the APA and all other documents contemplated thereby; (ii) has all of the power and authority necessary to consummate the transactions contemplated by the APA; and (iii) has taken, or will take, all action necessary to authorize and approve the APA and the consummation of the transactions contemplated thereby. No consents or approvals, other than those expressly provided for in the APA, are required for the Trustee to consummate the Sale.

J.  **Sale in the Best Interests of the Debtor's Estate and Creditors**.  Good and sufficient reasons for approval of the APA and the Sale have been articulated, and the relief requested in the Sale Motion and granted herein is in the best interest of the Debtor, its estate, its creditors and other parties in interest.

K.  **Assumed Contracts Should be Assigned to Purchaser**.  In addition to the sale of the Purchased Assets, good and sufficient reasons also exist with respect to approving the assumption by the Trustee of the Assumed Contracts and for the subsequent

assignment of the same to the Purchaser. A schedule of all Assumed Contracts is attached hereto as Exhibit B and incorporated herein. All defaults under the Assumed Contracts have been cured, or will be cured on the Closing Date (as defined herein). In addition, the Purchaser has provided adequate assurance of future performance. Moreover, the Assumed Contracts are an integral part of the Sale since they are necessary to operate the Purchased Assets and the Purchaser will not close without the Assumed Contracts.

L.    **Business Justification**. The Trustee has demonstrated both (i) good, sufficient and sound business purposes and justifications and (ii) compelling circumstances for the Sale outside of the ordinary course of business under section 363(b) of the Bankruptcy Code in that, among other things, the immediate approval by this Court of the Sale to the Purchaser is necessary and appropriate to maximize the value of the Debtor's estate. Entry of an order approving the APA and all of the provisions thereof is a necessary condition precedent to the Purchaser's consummation of the transactions set forth in the APA. The Sale does not constitute a *de facto* plan of reorganization or liquidation, as the Sale does not and will not: (a) impair or restructure existing debt of, or equity interests in, the Debtor; (b) impair or circumvent voting rights with respect to any future plan proposed by the Debtor; (c) circumvent chapter 11 plan safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (d) classify claims or equity interests or extend debt maturities. Given all the circumstances of this bankruptcy case and the adequacy and fair value of the purchase price under the APA, the proposed Sale constitutes a reasonable and sound exercise of the Trustee's business judgment and should be approved.

M.    **Consideration**. The consideration provided by the Purchaser pursuant to the APA constitutes reasonably equivalent value or fair consideration under the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, the Bankruptcy Code, and the laws of the United States, any state, territory, possession thereof or the District of Columbia.

The APA represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of this chapter 11 case. Based on the Sale Motion and the record at the Sale Hearing, no other person or entity or group of entities, other than the Purchaser, has offered to purchase the Purchased Assets on terms that would give greater economic value to the Debtor's estate. Approval of the Sale Motion and the APA, and consummation of the transactions contemplated thereby, is in the best interests of the Debtor, its estate, its creditors and all other parties in interest.

N. **Free and Clear.** The Debtor is the sole and lawful owner of the Purchased Assets. Except as otherwise expressly provided herein in Section Q, the transfer of the Purchased Assets to the Purchaser under the APA will be a legal, valid, and effective transfer of the Purchased Assets and vests or will vest the Purchaser with all right, title, and interest of the Trustee and Debtor to the Purchased Assets free and clear of all liens (as defined in section 101(37) of the Bankruptcy Code, whether consensual, statutory, possessory, judicial or otherwise), claims (as defined in section 101(5) of the Bankruptcy Code and including without limitation successor liability claims), or other interests, of any kind or nature whatsoever, whether known or unknown, legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or after the Petition Date, and whether imposed by agreement, understanding, law, equity or otherwise, accruing, arising or relating thereto (collectively, the "Interests"[2]), at any time prior to April 21, 2011, or such other date as the Trustee and

---

[2]        The term "Interests" as used in this Order includes, without limitation: all encumbrances; obligations; debts; liabilities; demands; guaranties; options; rights; restrictions; contractual commitments, including but not limited to, any license obligations; rights of first refusal or interests; any of the foregoing that purport to give to any party any defense, a defense or right of setoff, or recoupment against or a right or option to effect any forfeiture, modification or termination of the Debtor's interests in the Purchased Assets, or any similar rights; any of the foregoing arising under any mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, including, without limitation, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership; and any of the foregoing arising in connection with any agreements, acts, or failures to act, of Seller or any of the Seller's predecessors, affiliates, or representatives, including, but not limited to, any of the foregoing arising under any bulk-transfer laws, doctrines of successor liability or

Purchaser mutually agree (the "Closing Date"). The Purchased Assets do not include, and affirmatively exclude, the Excluded Assets as provided in the APA, and such Excluded Assets are not sold or subject to this Order, and the Interests of any person with respect to the Excluded Assets are not impaired or affected (or created or enlarged) by this Order.

O.  **Free and Clear Findings Needed by Purchaser**. The Purchaser asserts that it would not have entered into the APA and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its estate and its creditors, if the sale of the Purchased Assets to the Purchaser was not free and clear of all Interests of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be liable for any of the Interests.

P.  **No Liability Findings Needed by Purchaser**. Purchaser asserts that it will not consummate the transactions contemplated by the APA unless the APA specifically provides, and the Court specifically orders, that none of Purchaser or its affiliates, members or shareholders or the Purchased Assets will have any liability whatsoever with respect to the Sale, or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any liability, including any Interest.

Q.  **Certain Regulatory Obligations Excepted**. Notwithstanding anything to the contrary in the Sale Motion or this Order, nothing in the Sale Motion or this Order is intended to: (i) release or nullify any party's liability to the Texas Commission on Environmental Quality ("TCEQ") and Texas Department of Licensing and Regulation ("TDLR") under statutes or regulations to which any such party would be subject if the contemplated sale had taken place outside of bankruptcy; (ii) modify the obligations of the Purchaser to comply with applicable regulations and statutes concerning the Purchased Assets; or (iii) impair or restrict the TCEQ's or the TDLR's ability to pursue all of its rights

---

similar theories. Notwithstanding the foregoing, "Interests" does not include those certain environmental obligations discussed in Section Q hereof.

and remedies in an administrative proceeding or in state court against any entity which is the owner or operator of the Purchased Assets. Nothing in this provision obligates the Purchaser with respect to the Purchased Assets for the period prior to the date of Closing, provided, however (and as set forth above), the Purchaser is responsible for ownership and operation of the Purchased Assets from and after the Closing, including liability from and after Closing of continuing violations or conditions in existence at or after Closing.

R.  **Satisfaction of 363(f) Standards**. The Seller may sell and transfer, and Purchaser may purchase, the Purchased Assets free and clear of any Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Each holder of any Interest against the Debtor, its estate, or any of the Purchased Assets: (i) has, subject to the terms and conditions of this Order, consented to the Sale or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Interest; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code, including that such Interests is in bona fide dispute. Those holders of Interests who did not object, or who withdrew their objections, to the Sale Motion and Sale are deemed, subject to the terms of this Order, to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. All holders of Interests are adequately protected by having their Interests attach to the proceeds ultimately attributable to the Purchased Assets against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of priority, that such Interests had prior to the Sale, subject to any rights, claims and defenses the Trustee, the Debtor or its estates, as applicable, may possess with respect thereto.

S.  **No Fraudulent Transfer**. The APA was not entered into for the purpose of hindering, delaying or defrauding creditors of the Debtor. The transactions

contemplated by the APA are not fraudulent transfers or fraudulent conveyances under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.

T. **No Successor Liability**. The transfer of the Purchased Assets to the Purchaser under the APA shall not result in the Purchaser, or any of its affiliates, successors or assigns, having any liability or responsibility (i) for any Interest, or any other obligation, of or against the Debtor or its estate, and neither the Purchaser, nor any of its affiliates, successors and assigns, shall, as a result of the Sale or any action taken in connection with the Sale, be deemed to (1) be a successor (or other similarly situated party) to the Debtor or Trustee or (2) have, *de facto* or otherwise, merged with or into the Debtor or the Trustee, or (ii) to the Debtor, Trustee or to third parties except as is expressly set forth in the APA. Without limiting the effect or scope of the foregoing, to the fullest extent permitted by law, the transfer of the Purchased Assets from the Trustee to the Purchaser does not and will not subject the Purchaser, or any of its affiliates, successors or assigns, or any of their respective properties (including the Purchased Assets) to any liability for Interests against the Debtor or Trustee or Interests of the Debtor or Trustee in such Purchased Assets by reason of such transfer under the laws of the United States or any state, territory or possession thereof, or the District of Columbia, applicable to such transactions, including, without limitation, any bulk-transfer laws, successor liability or similar theories. Except as expressly provided for in the APA or this Order, the Purchaser is not acquiring or assuming any liability, warranty or other obligation of the Debtor or Trustee. The transfer of the Purchased Assets to the Purchaser, will not subject the Purchaser to any liability whatsoever with respect to the operation of the Debtor's businesses prior to the Closing Date, including, without limitation, any liability arising from any of the following: (1) any employment or labor agreements, consulting agreements, severance agreements, change-in-control agreements, or other similar

agreements to which the Debtor is or was a party; (2) any pension, welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtor; (3) the cessation of the Debtor's operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, and any obligations with respect thereto that arise from the with respect thereto that arise from the Employee Retirement Income Security Act of 1974, as amended, the Fair Labor Standard Act, Title VII of the Civil rights Act of 1964, the Age Discrimination and Employment Act of 1967, as amended, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985 or the Worker Adjustment and Retraining Notification Act, (iv) workers' compensation, occupational disease or unemployment or temporary disability insurance claims, (v) except as specifically assumed in the APA and as discussed in Section Q hereof, environmental liabilities, debts, claims or obligations which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act or any other Environmental, Health and Safety Requirements, (vi) any bulk sales or similar law, (vii) any litigation by or against the Debtor and (viii) the laws of the United States, any state, territory or possession thereof, or the District of Columbia, including any statute, rule, regulations, order, decree, administrative or judicial doctrine or other laws based, in whole or in part, directly or indirectly, in any theory of law or equity, including without limitation, any theory of equitable law, including, without limitation, any theory of antitrust or successor or transferee liability. For the avoidance of doubt, the liabilities set forth in this paragraph are included in the defined term "Interests" for all purposes herein.

U.    **Compelling Circumstances for an Immediate Sale**. Good and sufficient reasons for approval of the APA and the Sale have been articulated. The relief requested in

the Sale Motion is in the best interests of the Debtor, its estate and creditors. The Trustee has demonstrated sufficient and sound business justifications and compelling circumstances for the Sale outside of a plan of reorganization and the immediate consummation of the Sale to the Purchaser on the terms of the APA is necessary and appropriate to maximize the value of the Purchased Assets for the benefit of the Debtor, its estate and creditors. To maximize the value of the Purchased Assets and to maintain and preserve the viability of the businesses to which the Purchased Assets relate, the transaction must be consummated within the time frame set forth in the APA.

NOW, THEREFORE, IT IS ORDERED, JUDGED AND DECREED THAT:

1.  **Sale Motion is Granted**. The Sale Motion and the relief requested therein is GRANTED and APPROVED, as set forth herein and on the record of the Sale Hearing, which is incorporated herein in its entirety, and the Sale as contemplated thereby is granted and approved.

2.  **Objections Overruled**. Subject to the qualifications and limitations made on the record by the Trustee, any objections to the entry of this Order or the relief granted herein or requested in the Sale Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice.

3.  **Approval of APA**. The APA and all of the terms and conditions thereto are hereby approved. The Trustee is hereby authorized and directed, without further order of the Court, to take any and all actions necessary or appropriate to: (i) assume the Assumed Contracts and assign the same to the Purchaser; (ii) consummate the Sale of the Purchased Assets to the Purchaser pursuant to the terms of the APA; (iii) close the Sale as contemplated by the APA and this Order; (iv) execute and deliver, perform under, consummate, implement, and close fully the APA, together with all additional instruments and documents that may

12

reasonable be necessary or desirable to implement the APA and Sale; and (v) take all other and further actions as may be reasonably necessary or appropriate to implement the transactions contemplated by the APA. Subject to Section 16 below, the Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other Sale-related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Order.

4.    **Free and Clear**. Except as expressly provided for in this Order, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, as of the Closing Date, the Trustee shall transfer, and the Purchaser shall take title to and possession of, the Purchased Assets free and clear of all Interests, with all such Interests to attach to the proceeds ultimately attributable to the property against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of priority, which such Interests now have against the Purchased Assets or their proceeds, subject to any rights, claims and defenses of the Trustee, the Debtor or its estate, as applicable, may possess with respect thereto. Upon closing of the Sale (the "Closing"), the Purchaser shall take title to and possession of the Purchased Assets. All persons and entities that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the Purchaser at the Closing. On the Closing Date, each of the Debtor's creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Interests in the Purchased Assets, if any, as such Interests may have been recorded or may otherwise exist. For clarity in any real estate or other public record, the Purchased Assets include the real property described in the APA.

5. **Valid Transfer**. As of the Closing Date, the transactions contemplated by the APA effect a legal, valid, enforceable and effective sale and transfer of the Purchased Assets to Purchaser, and shall vest Purchaser with title to such Purchased Assets free and clear of any Interests of any kind whatsoever. The Purchased Assets shall be transferred to the Purchaser "as is, where is" with all faults in accordance with the APA. As of the Closing Date, the APA and the transactions and instruments contemplated thereby shall be specifically performable and enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtor or the Trustee appointed in this bankruptcy case or any successor case.

6. **Injunction**. Except as expressly permitted by this Order, all persons and entities (including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors) holding Interests in or against all or any portion of the Purchased Assets arising under, out of, or in connection with, or in any way relating to the Trustee, the Debtor, the Purchased Assets, the operation of the Debtor's businesses prior to the Closing Date, or the transfer of the Purchased Assets to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such person's or entity's Interests against the Purchaser, any of its affiliates, successors or assigns, any property of any of the foregoing, or any of the Purchased Assets. On and after the Closing, no holder of any Interest against the Debtor shall interfere with Purchaser's title to or use and enjoyment of the Purchased Assets based on or related to such Interests, and all such Interests, if any, shall attach to the Debtor's interests in the Sale proceeds as provided in this Order in the order of their priority, with the same validity, force and effect which they have against such Purchased Assets immediately before the Closing, subject to any rights, claims

and defenses that the Debtor's estate and Debtor or Trustee, as applicable, may possess with respect thereto.

7. **Release of Interests**. Except as otherwise expressly provided in this Order, any person or entity that has filed a statement or other document evidencing an Interest in, to or against the Purchased Assets, shall, remove any and all such Interests on the Purchased Assets. If any of such persons or entities shall not have delivered to the Trustee in proper form, appropriate termination statements, releases and documents in accordance with this paragraph, then the Purchaser is authorized to file, register or otherwise record a certified copy of this Order (and the subject filing or recording officer is authorized and directed to file or record such certified copy of this Order), which, once filed, registered or otherwise recorded, shall constitute evidence of the release of all such Interests in, to or against the Purchased Assets. A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any of such Interests of record.

8. **Direction to Release Interests**. On the Closing Date, each of the Debtor's creditors or Interest holders is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Interests in the Purchased Assets, if any, as such Interests may have been recorded or may otherwise exist.

9. **No Successor Liability**. Neither Purchaser nor its affiliates, successors or assigns shall, as a result of the consummation of the transaction contemplated by the APA: (a) be a successor to Seller or the Debtor or its estate or the Trustee; (b) have, *de facto* or otherwise, merged or consolidated with or into Seller, the Trustee or the Debtor or its estates; or (c) be a continuation or substantial continuation of the Seller, the Trustee or the Debtor or any enterprise of the Debtor. The transfer of the Purchased Assets to Purchaser under the APA shall not result in Purchaser, its affiliates, members, or shareholders, or the Purchased Assets: (i) having any liability or responsibility for any Claim against Seller, the Trustee or

the Debtor or against an insider of the Debtor; (ii) having any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interest; or (iii) having any liability or responsibility to Seller, the Trustee or the Debtor except as is expressly set forth in the APA.

10. **Examples of No Successor Liability**. Without limiting the effect or scope of the foregoing and except as otherwise expressly provided herein, as a result of the Closing of the transactions contemplated by the APA, the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, alter ego, veil piercing, continuity of enterprise, mere continuation, product line, *de facto* merger or substantial continuity, whether known or unknown, legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of the bankruptcy case, whether imposed by agreement, understanding, law, equity or otherwise with respect to the Seller, the Trustee or the Debtor or any obligations of Seller, the Trustee or the Debtor arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing Date.

11. **Prohibition of Actions Against Purchaser**. Except as otherwise expressly provided for in this Order or the APA, the Purchaser shall not have any liability or other obligation of the Debtor or the Trustee arising under or relating to the Purchased Assets and shall not be liable for any Claims against the Debtor or the Trustee or any of their predecessors or affiliates, and shall have no successor or vicarious liabilities of any kind, character or nature whatsoever, including under any theory of antitrust, successor or transferee liability, labor law, or *de facto* merger whether known or unknown as of the

Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the Purchased Assets prior to the Closing.

12. **Effect of Order**. On the Closing Date, this Order shall be considered and shall constitute (a) for any and all purposes, a full and complete general assignment, conveyance and transfer of the Debtor's interest in the Purchased Assets to the Purchaser, and (b) other than as expressly provided for in the APA or in this Order, a determination that all Interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing Date shall have been unconditionally released, discharged and terminated as of the Closing Date, and that the Sale described herein have been effected. This Order shall be binding upon and shall govern the acts of all entities, including without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets, and each of the foregoing is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

13. **Binding on Successors**. The terms and provisions of the APA and this Order shall be binding in all respects upon the Trustee, the Debtor, its estates, the Purchaser, all creditors (whether known or unknown) of the Debtor, all holders of Interests against or on all or any portion of the Purchased Assets, any non-debtor counterparties to any of the Debtor's executory contracts or unexpired leases, any holders of equity interests in the

Debtor, the Purchaser or their respective affiliates, the Trustee appointed in this bankruptcy case or any successor case, and the successors and assigns of each of the foregoing. This Order, the APA and the other agreements contemplated thereby shall inure to the benefit of the Debtor, its estates, its creditors, the Trustee, the Purchaser, and the successors and assigns of each of the foregoing.

14. **Good Faith**. The transactions contemplated by the APA are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale with the Purchaser, unless such authorization is duly stayed pending such appeal prior to the Closing Date. The Purchaser is a good faith purchaser of the Purchased Assets, and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

15. **Fair Consideration**. The consideration provided by the Purchaser pursuant to the APA for its purchase of the Purchased Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia. The consideration provided by Purchaser for the Purchased Assets under the APA is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

16. **Retention of Jurisdiction**. This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Order, the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor or the Trustee is a party, including, but not limited

18

to, retaining jurisdiction to: (a) compel delivery of the Purchased Assets to the Purchaser; (b) interpret, implement and enforce the provisions of this Order and any related order; (c) protect the Purchaser against any Interests in the Purchased Assets of any kind or nature whatsoever that attached to the proceeds of the Sale; and (d) any disputes related to the APA.

17. **Surrender of Possession**. All entities that are currently, or on the Closing Date may be, in possession of some or all of the Purchased Assets in which the Debtor holds an interest are hereby directed to surrender possession of the Purchased Assets either to (a) the Trustee before the Closing Date, or (b) to Purchaser on the Closing Date.

18. **Fees and Expenses**. Any obligations of the Trustee in favor of the Purchaser (including without limitation any obligation to pay any amounts or deliver documents to the Purchaser in connection with the APA) shall (i) be performed when due in the manner provided in the APA without further order of this Court, and (ii) not be discharged, modified or otherwise affected by any reorganization plan for the Debtor, except by an express agreement with the Purchaser, its successors, or assigns.

19. **Application of Sale Proceeds**. Any and all valid and perfected Interests in Purchased Assets of the Debtor shall attach to any proceeds of such Purchased Assets immediately upon receipt of such proceeds by the Trustee (or any party acting on the Trustee's behalf) in the order of priority, and with the same validity, force and effect which they now have against such Purchased Assets, subject to any rights, claims and defenses the Debtor, its estates or the Trustee, as applicable, may possess with respect thereto.

20. **Non-Material Modifications**. The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estates.

21. **Subsequent Plan Provisions**. Nothing contained in any subsequent order of this Court or any court of competent jurisdiction in this bankruptcy case or any successor case (including, without limitation, any order authorizing the sale of assets pursuant to sections 363, 365 or any other provision of the Bankruptcy Code or any order entered after the conversion of any of the bankruptcy cases to a case under chapter 7 of the Bankruptcy Code), or in any chapter 11 plan confirmed in the bankruptcy case or any order confirming any such plan, shall alter, conflict with, or derogate from, the provisions of the APA or this Order, which provisions shall survive and remain in full force and effect.

22. **Failure to Specify Provisions**. The failure specifically to include any particular provisions of the APA or the other agreements contemplated thereby in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the APA and the other agreements contemplated thereby be authorized and approved in their entirety. Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

23. **No Stay of Order**. Notwithstanding the provisions of Bankruptcy Rules 6004 and 6006 or any applicable provisions of the Local Rules, this Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon entry. Time is of the essence in closing the transactions referenced herein, and the Trustee and the Purchaser intend to close the Sale as soon as practicable. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

24. **Preservation of Certain Records**. Subject to further order of the Court, the Trustee and Purchaser are hereby ordered (and shall cause their affiliates) to take appropriate measures to maintain and preserve all records held by each relating to the Purchased Assets for a period of three (3) years or such other period as may be required by

applicable law; provided, however, that in no event shall the Trustee be required to preserve such records after this bankruptcy case is closed after providing notice and an opportunity to acquire such records to Purchaser.

25.     **Ad Valorem Taxes**.  All ad valorem taxes for 2010, if any (or any, if any, prior years), pertaining to the Purchased Assets shall be paid prior to or at Closing by the Trustee from proceeds of the Sale.  Ad valorem taxes for 2011 pertaining to the Purchased Assets shall be prorated in accordance with the APA and shall become the responsibility of the Purchaser.

26.     **Failure to Close by the Closing Date**.  In the event that the Sale is not closed on or before the Closing Date, either party may seek modifications of this Order.

27.     **Payment of Closing Costs; Retention of Proceeds**.  The proceeds from the Sale of the Purchased Assets, together with Debtor's cash on hand (which is an Excluded Asset) shall be used to pay reasonable and normal Closing costs, as approved by the Trustee (including, but not limited to the fees of Global Hunter Securities, LLC as provided by Final Order on the Application for the Approval of Employment of Global Hunter Securities, LLC as Investment Banker for the Debtor (Docket No. 157) related to the transaction evidenced by the APA), to ad valorem taxes pursuant to the APA to the extent of the Seller's liability therefor, to pay cure amounts for Assumed Contracts (not to exceed approximately the amounts shown on Exhibit B), to maintain the Escrow Amount under the Escrow Agreement as provided in the APA, and the subsequent "true-up" for working capital as provided in the APA, for the payment of ordinary course outstanding checks, payroll and taxes, and sales taxes accrued through Closing, and for any post-petition ordinary course accounts payable (other than amounts alleged to be owed to SemCrude or other disputed payables) accrued through Closing and not assumed by the Purchaser. The balance of the proceeds of Sale shall be retained by the Trustee, at either Chase Bank or Compass Bank subject to the liens and

Interests of the Lenders (as defined below), and other parties holding Interests, to the extent such liens and other Interests exist at Closing with respect to the Purchased Assets pursuant to Section 4, above, pending further order of this Court.[3] The Lenders shall continue to have a lien and Interests on the Excluded Assets to the extent, if any, the Lenders held such liens or other Interests prior to Closing.

28.     **Order Controls**. To the extent that this Order is inconsistent with any prior order or pleading with respect to the Sale Motion in this bankruptcy case, the terms of this Order shall govern. To the extent there are any inconsistencies between the terms of this Order and the APA (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

###

Submitted by:

**Langley & Banack, Inc.**
**745 E. Mulberry, Suite 900**
**San Antonio, TX 78216**
**Telephone: (210) 736-6600**
**Facsimile: (210) 735-6889**

**David S. Gragg**
**State Bar No. 08253300**
**Steven R. Brook**
**State Bar No. 3042300**
**NATALIE F. WILSON**
**Hawaii Bar No. 8852**
*Admitted Pro Hac Vice*

---

[3]     On February 11, 2010 this Court entered its Interim Order Authorizing Limited Use of Cash Collateral, Obtaining Credit Secured by Senior Liens, and Granting Adequate Protection to Existing Lienholders (Docket No. 39); on February 25, 2010, the Court entered its Final Agreed Order Authorizing Limited Use of Cash Collateral, Obtaining Credit Secured by Senior Liens, and Granting Adequate Protection to Existing Lienholders (Docket No. 96); that Order was amended on March 3, 2010 (Docket No. 113), and such financing has been amended through the 8th amendment. Collectively, such orders are referred to as the "DIP Financing Order." Pursuant to the DIP Financing Order, the Debtor (and subsequently, the Trustee) entered into a financing agreement with JPMorgan Chase Bank, N.A. ("Chase Bank"), as issuing bank and administrative agent for itself and any future lenders, including Chase Capital Corporation ("Chase Capital," and together with Chase Bank, the "Lenders," and each, a "Lender").