UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| In re: | § | CHAPTER 11 CASE |
|---|---|---|
| | § | |
| AGE REFINING, INC., | § | Case No. 10-50501-LMC |
| | § | |
| Debtor. | § | |

**TRUSTEE'S NOTICE OF FINALIZATION OF WORKING CAPITAL ADJUSTMENT BETWEEN AGE REFINING, INC. AND NUSTAR REFINING, LLC**

TO THE HONORABLE LEIF M. CLARK, UNITED STATES BANKRUPTCY JUDGE, CREDITORS AND PARTIES-IN-INTEREST:

COMES NOW Eric J. Moeller, the Chapter 11 Trustee ("Trustee") in the above captioned case, and hereby provides notice to the Court, creditors and all parties in interest of the following:

1. Pursuant to the Asset Purchase Agreement dated as of April 11, 2011 ("Execution Date"), as amended, supplemented and modified by that certain First Amendment dated as of April 19, 2011 (collectively, the "Purchase Agreement") by and between NuStar Refining, LLC ("Purchaser") and Eric J. Moeller ("Seller"), solely in his capacity as Chapter 11 Trustee of AGE Refining, Inc., a Texas corporation ("AGE"), pursuant to which Seller agreed to sell, and Purchaser agreed to purchase, substantially all of AGE's assets ("Purchased Assets") used in connection with the refinery business operated by Seller, excepting however certain terminal assets located in Aransas Pass/Ingleside, as more particularly described in the Purchase Agreement. The transactions contemplated by the Purchase Agreement were approved by this Court on April 14, 2011 and were subsequently consummated effective as of 12:01 a.m. on April 19, 2011 ("Closing Date").

2. In accordance with the terms of the Purchase Agreement, Purchaser agreed to

1

purchase from Seller AGE's working capital (other than cash), consisting of certain inventory, accounts receivable and prepayments, net of certain crude and trade payables. On the Closing Date, Purchaser escrowed $8,118,562.84 of the purchase price with Chase Bank as escrow agent under the Purchase Agreement. Section 1.3 of the Purchase Agreement provided for Purchaser to deliver to Seller a Preliminary Post-Closing Working Capital Estimate (as such term is defined in the Purchase Agreement) on or prior to April 28, 2011; given the magnitude of such estimate relative to the Closing Date Working Capital Estimate (as such term is defined in the Purchase Agreement), Purchaser and Seller directed Chase Bank as escrow agent to release $5,118,562.84 from such escrow to Seller.

3. Section 1.3 of the Purchase Agreement further directed the Purchaser to deliver to Seller a statement setting forth the Closing Adjustment (as such term is defined in the Purchase Agreement) pertaining to working capital, which statement was delivered by Purchaser to Seller on May 19, 2011. Seller and Purchaser continued to work together to mutually resolve remaining issues as to the calculation of the net working capital in AGE as of the Closing Date acquired by Purchaser and any amounts due to Seller in excess of the Closing Date Working Capital Estimate. Purchaser and Seller executed a Side Letter Agreement dated effective May 19, 2011 to (i) specifically identify the trade accounts payable (evidenced by issued invoices) assumed by Purchaser and (ii) allocate the obligation for payment of certain accounts payable for goods and/or services provided over a period of time that straddles the Closing Date on a pro rata basis as between Purchaser and Seller based on number of days of service, metering or any other equitable and appropriate measure. A copy of the Side Letter Agreement is attached hereto as Exhibit A and is incorporated herein by reference (without exhibits).

4. As a result of the post-closing adjustments described above, the remaining

2

$3,000,000.00 held in escrow with Chase Bank was released to Seller. In addition, Purchaser paid Seller an additional $2,783,083.63 as a result of the working capital adjustment and subsequent "true up" procedure summarized above and reflected in the Purchase Agreement and Side Letter Agreement. These funds have been deposited into the Trustee's operating account.

Dated: June 10, 2011

                                      Respectfully submitted,

                                      LANGLEY & BANACK, INCORPORATED
                                      745 E. Mulberry, Suite 900
                                      San Antonio, TX 78212
                                      Telephone: (210) 736-6600
                                      Facsimile: (210) 735-6889

                                      By: */s/ David S. Gragg*
                                      DAVID S. GRAGG
                                      State Bar No. 08253300
                                      STEVEN R. BROOK
                                      State Bar No. 03042300
                                      NATALIE F. WILSON
                                      Hawaii Bar No. 8852
                                      Admitted *pro hac vice*
                                      ALLEN M. DeBARD
                                      State Bar No. 24065132

                                      **GENERAL COUNSEL TO ERIC J.**
                                      **MOELLER, CHAPTER 11 TRUSTEE**

## CERTIFICATE OF SERVICE

    This is to certify that a true and correct copy of the above and foregoing document was filed with the Court and served electronically upon those parties enrolled in ECF and/or mailed by U.S. First Class Mail, postage prepaid, to the parties listed on the Limited Service List established in this case unless otherwise noted on this the 10th day of June 2011.

                                      */s/ David S. Gragg*
                                      DAVID S. GRAGG

# EXHIBIT "A"

**SIDE LETTER AGREEMENT**
dated effective as of May 19, 2011

*Via facsimile (210) 735-6889 and electronic mail*

Eric J. Moeller, Trustee
c/o Langley & Banack, Inc.
745 E. Mulberry, Suite 900
San Antonio, TX 78212

    Re:    Working Capital Adjustment

Dear Mr. Moeller:

    Reference is made to that certain Asset Purchase Agreement dated as of April 11, 2011 (*"Execution Date"*), as amended, supplemented and modified by that certain First Amendment dated as of April 19, 2011 (collectively, the *"Purchase Agreement"*) by and between NuStar Refining, LLC, a Delaware limited liability company (*"Purchaser"*), and Eric J. Moeller (*"Seller"*), solely in his capacity as Chapter 11 Trustee of AGE Refining, Inc., a Texas corporation (*"AGE"*), pursuant to which Seller agreed to sell, and Purchaser agreed to purchase, substantially all of AGE's assets (*"Purchased Assets"*), used in connection with the business operated by Seller as of the Execution Date. The transactions contemplated by the Purchase Agreement were consummated effective as of 12:01 a.m. on April 19, 2011 (*"Closing Date"*). Capitalized terms used herein and not defined shall have the meaning given such terms in the Purchase Agreement.

    In accordance with the terms of the Purchase Agreement, Purchaser agreed to purchase from Seller the Assigned Inventory, Assigned Accounts Receivable and Assigned Prepayments, and assume the Cumulative Accounts Payable (in each case, as such terms are defined in the Purchase Agreement). Section 1.3 of the Purchase Agreement provides that Purchaser will prepare a Closing Adjustment Statement and deliver the same to Seller within 30 days after the Closing Date, setting forth Purchaser's calculation of the Closing Date Working Capital, together with supporting calculations and information. A copy of the Closing Adjustment Statement as agreed between Purchaser and Seller is attached hereto as Schedule 1.

    Purchaser and Seller acknowledge and agree that Purchaser has made, and will continue to make, payments in respect of the invoices set forth on Schedule 2 (attached hereto) and will set off such amounts as accounts payable in the Closing Adjustment Statement dated as of May 19, 2011. For the avoidance of doubt, Seller agrees that Purchaser shall have no liability for accounts payable for goods and services provided prior to the Closing Date, whether in respect of goods and/or services provided by trade creditors, crude suppliers or other vendors, other than the invoices for accounts payable reflected on Schedule 2. All accounts payable for goods and/or services provided prior to the Closing Date, other than the accounts payable reflected on Schedule 2, shall be solely for the account of Seller, and will be referred to Seller to handle.

    In the event an invoice for accounts payable not reflected on Schedule 2 covers a period for the provision of goods and/or services that includes the Closing Date, Purchaser and Seller agree that the fees for goods and/or services provided prior to the Closing Date shall be allocable to Seller and the fees for goods and/or services provider on or after the Closing Date shall be allocable to Purchaser. Purchaser and

Seller further agree to negotiate in good faith on an equitable allocation of such fees, which may include a pro rata allocation based on number of days or a metering of goods provided, or any other appropriate measure to properly allocate fees as between Purchaser and Seller.

The internal laws of the State of Texas (irrespective of its choice of law principles) shall govern the validity of this Letter Agreement, the construction of its terms, and the interpretation of the rights and obligations of the parties hereto. This Letter Agreement may be executed in any number of counterparts, each of which shall be deemed an original as against any party whose signature appears thereon, and all of which taken together shall be deemed to constitute one and the same instrument. This Letter Agreement shall become binding when one or more counterparts hereof, individually or taken together, shall bear the signatures of all the parties reflected hereon as signatories. Nothing in this Letter Agreement, whether express or implied, is intended to or shall confer any rights, benefits or remedies under or by reason of this Letter Agreement on any persons or entities other than the parties hereto and their respective successors and assigns.

Very truly yours,

NUSTAR REFINING, LLC

By: _____
Michael H. Hoeltzel
Senior Vice President

ACKNOWLEDGED AND AGREED TO
AS OF THE DATE FIRST ABOVE WRITTEN:

ERIC J. MOELLER, SOLELY IN HIS CAPACITY
AS CHAPTER 11 TRUSTEE OF AGE REFINING, INC.

By: _____
Eric J. Moeller
Trustee